George **FEIGLEY**, Plaintiff,

v.

Thomas A. **FULCOMER** and David S. Owens, Jr., Defendants.

No. 3:CV–87–909.

United States District Court,
M.D. Pennsylvania.

July 27, 1989.

Jeffrey J. Crossland, Lewisburg, Pa., for plaintiff.

Michael L. Harvey, Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for defendants.

OPINION

MUIR, District Judge.

### I. Introduction.

George Feigley, an inmate at the State Correctional Institution at Huntingdon, Pennsylvania, (Huntingdon), commenced this action pro se pursuant to 42 U.S.C. § 1983 by filing a complaint on June 29, 1987. Feigley named Thomas A. Fulcomer, the Superintendent of Huntingdon, as the sole Defendant, and Feigley alleged that Fulcomer was depriving him of various of his federal constitutional rights by not protecting him adequately from contracting Acquired Immune Deficiency Syndrome (AIDS) from other inmates and employees at Huntingdon. By order of December 24, 1987, we granted Feigley's motion for appointment of counsel and on February 22, 1988, we appointed counsel for him.

Feigley, through counsel, filed an amended complaint on May 4, 1988, in which he named as Defendants Superintendent Fulcomer and David S. Owens, Jr., who is the Commissioner of the Pennsylvania Department of Corrections. Feigley's amended complaint contains two counts. Count I, pled pursuant to 42 U.S.C. § 1983, alleges that Fulcomer and Owens are violating Feigley's Eighth Amendment rights by not protecting him adequately from contracting AIDS. Count II of Feigley's amended complaint pleads pendent state law claims against Fulcomer and Owens.

The Defendants filed a motion for summary judgment on April 17, 1989. Briefs, declarations under penalty of perjury, and other documents have been filed in support of and in opposition to the Defendants' motion for summary judgment, and this motion is now ripe for disposition.

### II. Relevant Medical Vocabulary.

AIDS is a disease in which the body's immune system becomes severely impaired. Because the body's ability to fight disease is decreased, unusual infections and forms of cancer occur. Pennsylvania Department of Corrections' Correctional Policy for the Management of HIV Infection (hereinafter "Correctional Policy for HIV Infection") at 1 (appended to Defendants' brief filed May 1, 1989, in support of their motion for summary judgment). Human immunodeficiency virus (HIV) is the virus that causes AIDS. *See* Correctional Policy for HIV Infection at 2. Antibodies are proteins in the blood that are made by the body to attack antigens, which are foreign organisms or toxins. Antibodies are usually effective in controlling the antigens. With some infections such as HIV, however, the antibodies do not fight the antigen but only mark its presence. *See* Correctional Policy for HIV Infection at 1–2.

### III. Discussion.

**A.** *The Summary Judgment Standard.*

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

*Summary Judgment*

. . . . .

(c) *Motion and Proceedings Thereon. . . .* The judgment sought shall be rendered forthwith if the pleadings, dep-

ositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

.    .    .    .    .

(e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial....

The United States Supreme Court has stated with regard to motions for summary judgment that a material fact is one which might affect the outcome of the suit under the relevant substantive law. *See Anderson v. Liberty Lobby Company, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Supreme Court also stated in *Anderson v. Liberty Lobby, Inc.* that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 106 S.Ct. at 2510.

B. *Have the Defendants Violated Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment by Not Protecting Him Adequately from Contracting AIDS?*

The practices allegedly followed by the Defendants which Feigley claims violate his Eighth Amendment right to be free from cruel and unusual punishment can be divided into two categories: (1) those prac-

tices which the Defendants admit they follow and which are prescribed by the Correctional Policy for HIV Infection and (2) those practices which Feigley alleges the Defendants follow but which the Defendants deny following and which are not prescribed by the Correctional Policy for HIV Infection.

1. Have the Defendants violated Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment by Following those Practices about which Feigley Complains Which are Prescribed by the Correctional Policy for HIV Infection?

Feigley alleges in his amended complaint that the following four practices followed by the Defendants which are prescribed by the Correctional Policy for HIV Infection violate his Eighth Amendment right to be free from cruel and unusual punishment: (1) the Defendants do not test inmates routinely for HIV at the time they are received initially by a correctional institution under their control; (2) the Defendants do not test inmates routinely for HIV at the correctional institutions under their control; (3) the Defendants do not test an inmate at a correctional institution under their control for HIV if he or she requests such a test; and (4) the Defendants do not automatically segregate inmates at correctional institutions under their control who test positively for HIV or who are suffering from any stage of AIDS. We will address each of these practices.

a. *Does the Defendants' Practice of Not Testing Inmates Routinely for HIV at the Time They are Received Initially by a Correctional Institution Under Their Control Constitute a Violation of Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment?*

In determining whether the Defendants' practice of not testing inmates routinely for HIV at the time they are received initially by a correctional institution under their control violates Feigley's Eighth Amendment right to be free from cruel and unusual punishment, we must first deter-

mine the appropriate Eighth Amendment analysis to use. Feigley alleges in his amended complaint that the Defendants, by failing to test inmates routinely for HIV at the time they are received initially by a correctional institution under their control have been deliberately indifferent to his medical needs in violation of the Eighth Amendment. *See* Feigley's amended complaint, ¶¶ 51–52. The United States Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' [citation omitted], proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The United States Court of Appeals for the Third Circuit explained the aforementioned rule from *Estelle v. Gamble* as follows: "This standard [enunciated in *Estelle v. Gamble*] is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir.1978). We are of the view that the Defendants' failure to test inmates routinely for HIV at the time they are received initially by a correctional institution under their control does not constitute "deliberate indifference" to Feigley's "serious medical needs" as these phrases are used in *Estelle v. Gamble*. We decline to apply the "deliberate indifference to serious medical needs" analysis of *Estelle v. Gamble* to a situation in which the allegedly serious medical need claimed by the prisoner is only the possibility that he may contract a fatal disease from a fellow inmate or prison employee.

■ Feigley also alleges in his amended complaint that the Defendants' failure to test inmates routinely for HIV at the time they are received initially by a correctional institution under their control constitutes a breach of the Defendants' obligation to protect Feigley from involuntarily contracting AIDS and therefore, the Defendants are violating Feigley's Eighth Amendment right to be free from cruel and unusual punishment. *See* Feigley's amended complaint, ¶¶ 50–51. The United States Court

of Appeals for the District of Columbia Circuit explained the District of Columbia's obligation under the Eighth Amendment to protect an inmate in one of its jails from assault by another inmate as follows:

The eighth amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). Having incarcerated the individuals, stripped them of all means of self-protection, and foreclosed access to private aid, the state is constitutionally required to provide prisoners with some protection from the dangers to which they are exposed. *See Washington v. District of Columbia*, 802 F.2d 1478, 1481–82 (D.C.Cir.1986). Although the state is not obliged to insure an assault-free environment, a prisoner has a constitutional right to be protected from the unreasonable threat of violence from his fellow inmates. [Citations omitted].

.   .   .   .   .

We ... conclude that "deliberate indifference" was the appropriate standard by which to judge the District's conduct in this case. Accordingly, for Morgan [the inmate-plaintiff] to prevail, the jury was required to find that the District acted with deliberate indifference to its duty to protect Morgan from unreasonable risk of assault by another inmate on or about June 26, 1983.

*Morgan v. District of Columbia*, 824 F.2d 1049, 1057–1058 (D.C.Cir.1987). The parties in the case before us have not directed our attention to any cases in which the United States Court of Appeals for the Third Circuit has construed the Eighth Amendment to require prison officials to protect inmates from unreasonable risk of assault by other inmates. The Court of Appeals for the Third Circuit has, though, stated the following:

Liability under § 1983 may be imposed on prison officials even when the assault [on an inmate] has been committed by another prisoner, if there was intentional

conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials. [citations omitted].

*Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984) (en banc), *aff'd on other grounds sub nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The standard for imposing liability against prison officials pursuant to 42 U.S.C. § 1983 referred to in the above quotation from *Davidson v. O'Lone* is not a reference to the standard to be applied when an Eighth Amendment violation is alleged but rather is the standard to be applied when there is alleged an infringement of an individual's liberty interest in freedom from bodily injury, which is protected by the Fourteenth Amendment. *See Davidson v. O'Lone,* 752 F.2d at 822, 828. At this stage of the proceedings in the case before us, we will assume, without deciding, that in this circuit an inmate's allegation that prison officials were deliberately indifferent to their duty to protect the inmate from unreasonable risk of assault by another inmate states a cause of action for violation of the inmate's Eighth Amendment rights.

The Defendants admit that inmates are not routinely tested for HIV at the time they are received initially by a correctional institution under their control. Defendants' statement of undisputed facts, ¶ 6 (appended to Defendants' motion for summary judgment). The Defendants have submitted to the Court in support of their motion for summary judgment a declaration under penalty of perjury by Ford Brewer, M.D., M.P.H. (appended to the Defendants' brief in support of their motion for summary judgment). Dr. Brewer states the following in his declaration: (1) he is currently an instructor at Johns Hopkins School of Hygiene; (2) for over four years, he was the medical director of the Maryland Division of Correction and developed the AIDS policy for that state agency; (3) he was on the American Correctional Association's AIDS Task Force; (4) he wrote and is the principal investigator for the Centers for Disease Control/National Institute of Justice National HIV Study for prisons and jails; (5) he has published numerous articles in national and international journals and has spoken numerous times regarding AIDS policies for prisons and jails; (6) at the request of the Attorney General of Pennsylvania, he reviewed the Correctional Policy for HIV Infection; (7) he also reviewed the complaint in this case; (8) he prepared a report based upon his review of the Correctional Policy for HIV Infection and the complaint in this case; and (9) attached to his declaration as Exhibit 1 is a copy of his report.

With regard to Feigley's allegation in his amended complaint that the Defendants are violating his Eighth amendment right to be free from cruel and unusual punishment by failing to test inmates for HIV at the time they are received initially by a correctional institution under the Defendants' control, Dr. Brewer has stated the following in his report in defense of the Defendants' practice:

In general, mandated HIV antibody testing of all inmates protects neither inmates nor employes. It results in the use of more than one standard of infection control and creates a false sense of security. In opposition to a multiple standard of protection, Federal public health policy has recommended "Universal Precautions". Universal precautions are infection control standards based on the assumption that anyone may be infected and thus are directed similarly to all people....

The most important point is this: it is impossible to effectively separate infected from uninfected inmates. The test [HIV antibody test] does not indicate presence of the virus, it indicates presence of an antibody (a material made by the body). It takes days, weeks, and sometimes even months for the antibody to develop. Meanwhile the person is infectious, but has a negative antibody test.... Antibody screening of the population creates the illusion that there exists a subgroup of inmates that is not infected. Employes and other inmates then assume that the same infection control measures are not indicated for a presumed uninfected group. Unfortu-

nately, this illusion can be quite dangerous, as has been seen in the medical community. The medical community once tried to label certain patients as infectious. Instead of trying to separate infected from uninfected, the Centers for Disease Control has recommended "Universal Precautions".

. . . . .

"Universal Precautions" ... is often translated as "treat everyone as if they [sic] are infected."

Dr. Brewer's report at 1–2, 4.

Feigley does not allege that there is a test which the Defendants could give to each inmate at the time he or she is received by a correctional institution which would indicate the presence of HIV, as opposed to an HIV antibody. Additionally, Feigley has not submitted a report, affidavit, deposition, transcript, or any other document from any expert which rebuts the statements made by Dr. Brewer in his report. Dr. Brewer's report provides ample evidence that the Defendants' failure to test each inmate for HIV at the time he or she is received initially by a correctional institution under their control does not constitute deliberate indifference to their duty to protect Feigley from unreasonable risk of becoming infected with HIV or contracting AIDS; therefore, the Defendants have not violated Feigley's Eighth Amendment right to be free from cruel and unusual punishment by failing to test routinely inmates for HIV at the time they are received initially by a correctional institution.

b. *Does the Defendants' Failure to Test Inmates Routinely for HIV Violate Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment?*

Feigley alleges in his amended complaint that the Defendants do not test inmates routinely for HIV at the correctional institutions under their control and that their failure to do so violates his Eighth Amendment right to be free from cruel and unusual punishment. *See* Feigley's amended complaint, ¶¶ 50–51. The Defendants admit that, pursuant to the Correctional Poli-

cy for HIV Infection, there is no routine testing of inmates or employees of the Pennsylvania Department of Corrections for HIV. Defendants' statement of undisputed facts, ¶ 5. The Defendants further point out that the Correctional Policy for HIV Infection provides for HIV testing only when "ordered by a physician based upon the inmate's recent medical history and current clinical signs and symptoms. Testing based on past sexual or drug abuse behavior may be ordered at the discretion of the physician." *Id.* (quoting the Correctional Policy for HIV Infection). For the reasons expressed above in our discussion of the Defendants' failure to test inmates routinely for HIV at the time they are received initially by a correctional institution under the Defendants' control, we are of the view that the Defendants' failure to test inmates routinely for HIV at correctional institutions under their control does not constitute deliberate indifference to Feigley's serious medical needs and does not constitute deliberate indifference to their duty to protect Feigley from unreasonable risk of becoming infected with HIV or contracting AIDS from another inmate or an employee at Huntingdon. Therefore, the Defendants have not violated Feigley's Eighth Amendment right to be free from cruel and unusual punishment by not testing inmates routinely for HIV. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Morgan v. District of Columbia,* 824 F.2d 1049, 1057–1058 (D.C.Cir.1987); *Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984) (en banc), *aff'd on other grounds sub nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

c. *Does the Defendants' Failure to Test Feigley or Other Inmates for HIV when Feigley or Other Inmates Request Such a Test Violate Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment?*

Feigley alleges in his amended complaint that the Defendants' refusal to test him for HIV if he would request such a test vio-

lates his Eighth Amendment right to be free from cruel and unusual punishment. *See* Feigley's amended complaint, ¶¶ 50–51. Feigley also apparently alleges in his amended complaint that the Defendants' refusal to test other inmates for HIV if they would request such a test violates his Eighth Amendment right to be free from cruel and unusual punishment. *See* Feigley's amended complaint, ¶¶ 50–51, ad damnum clause following ¶ 52. The Defendants admit that an inmate in an institution under the control of the Pennsylvania Department of Corrections will not be given a test for HIV automatically upon request. *See* Defendants' statement of undisputed facts, ¶ 5. As stated above, an inmate may be tested for HIV only when "ordered by a physician based upon the inmate's recent medical history and current clinical signs and symptoms. Testing based on past sexual or drug abuse behavior may be ordered at the discretion of the physician." *Id.* (quoting the Correctional Policy for HIV infection).

■ Feigley's claim that his Eighth Amendment right to be free from cruel and unusual punishment is violated by the Defendants' refusal to test another inmate for HIV when the other inmate requests such a test must fail for the same reasons discussed earlier in this opinion concerning the Defendants' failure to test inmates for HIV at the time they are received initially by a correctional institution under their control or routinely thereafter. Further, the Defendants' refusal to test Feigley for HIV automatically if he requests such a test does not constitute deliberate indifference by the Defendants to Feigley's serious medical needs and does not constitute deliberate indifference by them to their duty to protect Feigley from unreasonable risk of becoming infected with HIV or contracting AIDS from another inmate or employee at Huntingdon, for reasons expressed above. The Eighth Amendment, though, does more than proscribe deliberate indifference by prison officials to an inmate's serious medical needs and to their duty to protect an inmate from unreasonable risk of assault by another inmate. The Eighth Amendment also forbids "punishments of torture ... and all others in the same line of un-

necessary cruelty," *Estelle v. Gamble,* 429 U.S. at 102, 97 S.Ct. at 290 (quoting *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1879)), as well as punishments which "involve the unnecessary and wanton infliction of pain," *id.* at 102–103, 97 S.Ct. at 290 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). The Defendants have not presented any evidence in support of their motion for summary judgment which indicates that their refusal to test Feigley for HIV should he request such a test is not a punishment which "involve[s] the unnecessary and wanton infliction of pain" by failing to relieve the anxiety which might accompany an inmate's uncertainty as to whether he or she has a fatal disease. In fact, Dr. Brewer states the following on page 5 of his report: "Public health policy indicates anonymous testing should be provided. The Surgeon General of the Public Health Service has recommended confidential HIV antibody testing as a deterrent measure for all high risk individuals." It is not clear from the just-quoted sentences whether Dr. Brewer advocates that testing should be provided for inmates who voluntarily request a test or whether he advocates that, in instances where HIV testing is appropriate, such testing should be done anonymously. Because evidence submitted in support of a motion for summary judgment should be viewed in the light most favorable to the party opposing the motion, *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981), we are unable to say, based upon the record currently before us, that the Defendants are entitled to judgment in their favor on Feigley's claim that their refusal to test him for HIV if he requests such a test constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

There is, though, another difficulty with Feigley's claim that the Defendants are violating his Eighth Amendment rights by refusing to test him for HIV if he requests such a test. Feigley does not allege specifically in his amended complaint or set forth in his brief or declaration in opposition to the Defendants' motion for summary judg-

ment that he requested and was denied a test for HIV. We are concerned that there may be no case or controversy on this issue, in which event we would not have jurisdiction to entertain this claim. *See* U.S. Const. art. III, § 2; *Neiderhiser v. Borough of Berwick,* 840 F.2d 213, 216 (3d Cir.1988). It is proper for us to raise this jurisdictional question sua sponte, and we are obliged to resolve it before proceeding further with this claim. *See Neiderhiser v. Borough of Berwick,* 840 F.2d at 216. We will set forth a briefing schedule on this issue.

Because Feigley has the burden of demonstrating that we have jurisdiction to entertain this claim, *see Beary v. Norton–Simon, Inc.,* 479 F.Supp. 812, 813 (W.D.Pa. 1979) (Knox, J.), we will permit him to file the first brief.

*d. Does the Defendants' Failure to Segregate Automatically All Inmates who Test Positively for HIV or who are Suffering from any Stage of AIDS Violate Feigley's Eighth Amendment Right to be Free from Cruel and Unusual Punishment?*

■ Feigley alleges in his amended complaint that the Defendants do not segregate automatically those inmates at correctional institutions under their control who test positive for HIV or who are suffering from any stage of AIDS, and this practice violates Feigley's Eighth Amendment right to be free from cruel and unusual punishment. The Defendants admit that inmates who test positively for HIV are not segregated automatically from the general prison population. Defendants' statement of undisputed facts, ¶ 7. The Defendants also state the following concerning the housing arrangements for inmates who have tested positively for HIV:

7. [H]ousing plans for inmates having positive test results are handled on a case-by-case basis.

8. Determination of housing for HIV infected inmates is based upon comprehensive evaluations and medical judgment as to the appropriate level of care for the inmate's physical status and security considerations according to the following criteria:

(a) Security considerations;

(b) Physical condition;

(c) Psychiatric diagnosis and treatment;

(d) Inmate's inability to abstain from intimate sexual contact;

(e) Inmate's inability to follow blood and body fluid precautions due to inability to comprehend;

(f) Inmate's inability to follow good infection control measures; and

(g) Possible victimization by other inmates.

Defendants' statement of undisputed facts, ¶¶ 7–8. Dr. Brewer stated the following in his report with regard to the housing of inmates who have tested positively for HIV: "I would not recommend ... use of HIV antibody status for housing, security, programming, or treatment decisions." Dr. Brewer's report at 4. Feigley has not submitted any affidavits, deposition transcripts, or any other material by any kind of expert which contradicts the above statement by Dr. Brewer. Because Feigley has failed to oppose this statement by Dr. Brewer and based upon the discussions earlier in this opinion concerning the Defendants' failure to test inmates for HIV at the time they are received initially by a correctional institution under their control and routinely thereafter, we are of the view that the Defendants' failure to segregate automatically those inmates who have tested positively for HIV or who are suffering from any stage of AIDS does not violate Feigley's Eighth Amendment right to be free from cruel and unusual punishment.

2. Have the Defendants Failed to Take Appropriate Steps to Prevent, or do they Tacitly Condone and Allow, Homosexual Conduct among Inmates and Intravenous Drug Use by Inmates, thereby Failing Adequately to Prevent the Spread of HIV and, thus, not Sufficiently Protecting Feigley from Becoming Infected with HIV or Contracting AIDS, in Violation of his Eighth Amendment Right to be Free from Cruel and Unusual Punishment?

■ Feigley alleges in his amended complaint that the Defendants do not take ap-

propriate steps to prevent, and in fact tacitly condone and allow, homosexual conduct among inmates. Feigley's amended complaint, ¶ 51. Feigley also implies but does not allege specifically in his amended complaint that the Defendants do not take appropriate steps to prevent, and do actually condone and allow, intravenous drug use by inmates. *See* Feigley's amended complaint, ¶¶ 30, 32–33. Feigley alleges that the Defendants' actions with regard to homosexual conduct among inmates and intravenous drug use by inmates permits HIV to spread unreasonably among inmates and employees at Huntingdon, thereby increasing his chances of becoming infected with HIV or contracting AIDS, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The United States Court of Appeals for the Third Circuit recently has discussed in two separate opinions the circumstances under which a municipality can be held liable under 42 U.S.C. § 1983. *Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir.1988), involved a section 1983 suit against Upper Darby Township and various officials and employees of the Township which alleged that the suicide of an individual while she was detained by the Upper Darby Township Police Department was the result of constitutional violations by the aforementioned Defendants. The Court of Appeals stated as follows:

> Defendant Upper Darby Township cannot be held liable in a section 1983 action for its employees' actions solely on the basis of respondeat superior. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). It can be liable only if the action alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. at 2035–36.

*Id.* at 671 (footnote omitted). *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir.1989), involved a civil rights suit against a police officer and his employer, the City of Allentown, Pennsylvania. The Plaintiff alleged that the officer used excessive force in taking the Plaintiff into custody and also used excessive force against him while he was in police custody. The Plaintiff also alleged that the officer's use of excessive force was pursuant to a city custom of tolerating such conduct by its police officers which was a proximate cause of his injury. The Court of Appeals stated the following in discussing the Plaintiff's claim against the City of Allentown:

> A city may be held liable for an official policy or a custom which proximately causes a constitutional deprivation. A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (county attorney's decision to have sheriffs enter premises established official policy). A single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or a custom. However, if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Custom may be established by proof of knowledge and acquiescence. *See Pembaur v. Cincinnati*, 475 U.S. at 481–82 n. 10, 106 S.Ct. at 1299 n. 10, 89 L.Ed.2d at 473 n. 10.

*Id.* at 793–794.

With regard to Feigley's allegation that the Defendants do not take appropriate steps to prevent, and in fact tacitly condone and allow, homosexual conduct among inmates and intravenous drug use by inmates, the Defendants have responded by submitting in support of their motion for summary judgment a declaration under

penalty of perjury by Defendant Fulcomer, which states in pertinent part as follows:

1. I am the Superintendent of the State Correctional Institution at Huntingdon (SCI–Huntingdon). As superintendent I am responsible for the management of SCI–Huntingdon, which involves providing for the care, custody and control of inmates housed there.

. . . . .

4. Homosexual conduct is a violation of the Inmate Code of Conduct established by the Department of Corrections and is subject to disciplinary action.

5. It is the policy at SCI–Huntingdon to take steps to discipline inmates whenever homosexual conduct is discovered.

6. In response to a discovery request in this case, staff at SCI–Huntingdon conducted a review of all misconduct reports written between September 1, 1987 and December 31, 1988, to identify all misconduct charges relating to sexual activity and drug use. That study showed that 60 charges of misconduct were written during that period for homosexual conduct and illicit sexual activity. . . .

7. It is the policy at SCI–Huntingdon to house inmates so as to avoid homosexual activity. Known aggressive homosexuals are placed in single-cell status. Known homosexuals are not double-celled together.

8. Use of intravenous drugs is a violation of the Inmate Code of Conduct established by the Department of Corrections and is subject to disciplinary action.

9. It is the policy of SCI–Huntingdon to take steps to discipline inmates whenever intravenous drug use is discovered.

10. The study described in ¶ 6 herein showed that between September 1, 1987 and December 31, 1988, 10 charges of misconduct were brought against inmates at SCI–Huntingdon involving the use or possession of a syringe.

11. Department of Corrections policy requires that all inmates attend an AIDS education seminar which includes the viewing of two videotapes and a presentation by the institution medical staff emphasizing the major points of the tapes and answering questions. Attached hereto as Exhibit A–4 is a true and correct copy of the AIDS educational policy for SCI–Huntingdon.

12. I am unaware of any action taken by staff at SCI–Huntingdon to facilitate homosexual relationships. I have no knowledge of any housing relocation in May, 1987, which placed a young homosexual inmate and an older homosexual inmate into the same cell in order to facilitate their relationship. I also have no knowledge of staff permitting two homosexual couples to engage in sex openly in exercise pens in May, 1987, or any other time.

13. To the contrary, it is strict policy of SCI–Huntingdon to reduce to the extent possible, or eliminate, homosexual behavior. Any staff found to be willfully permitting homosexual conduct would be severely disciplined.

Defendant Fulcomer's declaration under penalty of perjury (appended to the Defendants' brief in support of their motion for summary judgment).

The only item of evidence submitted by Feigley in response to Defendant Fulcomer's declaration which, pursuant to Fed.R. Civ.P. 56(e), is sufficient to demonstrate that there is a genuine issue as to a material fact is a declaration under penalty of perjury by Feigley. Nowhere in Feigley's declaration does he assert that either Defendant Fulcomer or Defendant Owens had knowledge of and acquiesced in behavior by any of their subordinates which failed to prevent, or tacitly condoned and allowed, homosexual conduct among inmates or intravenous drug use by inmates. Nowhere in Feigley's amended complaint does he allege that either Defendant Fulcomer or Defendant Owens failed adequately to train their subordinates so as to prevent, and not tacitly condone and allow, homosexual conduct among inmates and intravenous drug use by inmates. Finally, insofar as Feigley's declaration attempts to demonstrate that homosexual conduct among inmates and intravenous drug use by inmates were so widespread and that the Defendants' subordinates did so little

to prevent, and in fact tacitly condoned and allowed, such homosexual conduct and intravenous drug use that it may be properly inferred that the Defendants knew about and acquiesced in such activity at Huntingdon, Feigley's declaration is deficient. Rule 56(e) of the Federal Rules of Civil Procedure states in part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Feigley's declaration does not state that the facts alleged therein are made on personal knowledge. Further, only one of the paragraphs in Feigley's declaration, Paragraph 3, concerns an incident which is apparently based upon Feigley's personal knowledge and which indicates that the Defendants' subordinates at Huntingdon are not taking appropriate steps to prevent, or are tacitly condoning and allowing, homosexual conduct among inmates or intravenous drug use by inmates. It is our view that Feigley's declaration is insufficient to demonstrate that there is a genuine issue as to a material fact with regard to the liability of both Defendant Fulcomer and Defendant Owens for failing to take appropriate steps to prevent, or tacitly condoning and allowing, homosexual conduct among inmates or intravenous drug use by inmates.

### C. *Feigley's Pendent State Law Claims.*

Neither the Defendants nor Feigley discussed Feigley's pendent state law claims in their briefs in support of and in opposition to the Defendants' motion for summary judgment. Because of the parties' failure to address Feigley's pendent state law claims, we decline at this juncture to discuss them.

### IV. Conclusion.

For the reasons set forth above, we will grant in part and deny in part the Defendants' motion for summary judgment and set forth a briefing schedule on the jurisdictional issue discussed above.

An appropriate order will be entered.

### ORDER

1. The Defendants' motion filed April 17, 1989, for summary judgment is granted in part and denied in part.

2. Judgment is awarded in favor of the Defendants and against Feigley on all of Feigley's federal law claims except his claim that the Defendants' refusal to test him for HIV if he requests such a test violates his Eighth Amendment right to be free from cruel and unusual punishment.

3. The Defendants' motion filed April 17, 1989, for summary judgment is denied as to Feigley's federal law claim still remaining.

4. By August 16, 1989, Feigley may file a brief addressing whether we have jurisdiction to entertain his claim that the Defendants' refusal to test him for HIV if he requests such a test violates his Eighth Amendment right to be free from cruel and unusual punishment.

5. Feigley's failure to file the brief specified in ¶ 4 of this order within the time permitted will result in the dismissal of this action.

6. If Feigley files the brief specified in ¶ 4, the Defendants will file a brief in response within 15 days after Feigley's brief is served.

7. If the Defendants file a brief in response, Feigley may file a reply brief within 15 days after the Defendants' brief is served.

8. A ruling with respect to Feigley's pendent state law claims is deferred until after we have decided the aforementioned jurisdictional question.