Woodrow JOHNSON, Plaintiff,

v.

UNITED STATES of America; Bureau of Prisons; D.J. Southerland; Mr. Sprayberry; Ed Moragne; Eva Porter; and Terri Anne Moore, Defendants.

No. CV 92–B–700–S.

United States District Court,
N.D. Alabama, S.D.

Feb. 4, 1993.

Woodrow Johnson, Talladega, AL, pro se.

Jack W. Selden, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL for defendants.

ORDER

BLACKBURN, District Judge.

The magistrate judge filed his report and recommendation on December 10, 1992, recommending that the defendants' motion for summary judgment in this cause be granted. The plaintiff has filed objections to the magistrate judge's report and recommendation.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the petitioner's objections thereto, the court is of the opinion that the magistrate judge's report is due to be and is hereby ADOPTED and his recommendation is ACCEPTED. Accordingly, the court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. Their motion for summary judgment, therefore, is due to be and the same is hereby GRANTED, and this action is DISMISSED.

REPORT AND RECOMMENDATION

PUTNAM, United States Magistrate Judge.

The plaintiff, Woodrow Johnson, is a federal prisoner incarcerated at the Federal Correctional Institute (FCI) in Talladega, Alabama. The plaintiff instituted this *pro se* action on March 25, 1992, pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2674, *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and 28 U.S.C. § 1331, wherein he alleges that he has been deprived of his constitutional rights by the actions of the following defendants: the United States of America, Bureau of Prisons ("BOP"), Warden D.J. Southerland, Hospital Administrator Mr. Sprayberry, Unit Manager Ed Moragne, Case Manager Eva Porter, and Unit Counselor Terri Anne Moore. The defendants are being sued in both their individual and their official capacities. The plaintiff seeks injunctive relief and monetary damages in the amount of $250,000. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1)(B), the complaint was referred to the undersigned magistrate

for a preliminary review and recommendation.

Pursuant to the court's order to show cause, the respondents filed their special report on August 14, 1992, attaching exhibits and the declarations of Roger Scott, Edward Moragne, Eva Porter, and Terri Anne Moore. In support of the special report, the defendants filed additional declarations of Kenneth P. Moritsugu, M.D., M.P.H., and D.J. Southerland. By order of September 4, 1992, the parties were notified that the special report filed by the respondents would be construed as a motion for summary judgment, and the petitioner was notified of the provisions and consequences of Rule 56 of the Fed.R.Civ.P. The plaintiff filed a response on September 25, 1992, stating substantially the same issues and arguments presented in his complaint.

The plaintiff contends that the defendants violated the Eighth Amendment of the Constitution by housing him in the same cell with an inmate who was dying from acquired immune deficiency syndrome (AIDS). The plaintiff claims that his former cellmate tampered with his toothbrush, toothpaste, and razor blade; in addition, on several occasions, he observed his cellmate's blood on their sink, toilet and towels. The plaintiff alleges that during the last few days prior to his cellmate's death, he was forced to feed and "sanitize" him. The plaintiff's cellmate died on July 10, 1990, shortly after he was transferred from the Talladega FCI. Although the plaintiff does not allege that he contracted AIDS from sharing facilities with his AIDS infected cellmate, he fears that he may have contracted it from him; he complains that he was damaged psychologically because he was subjected to witnessing his cellmate's deteriorating condition. Plaintiff tested negative for the human immunodeficiency virus (HIV) in July 1990, April 1991, and June 17, 1992.

## SUMMARY JUDGMENT STANDARD

Because the court is treating the special report from the defendants as a motion for summary judgment, the court must determine whether there are any genuine issues of material fact and whether the moving defendants are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See F.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. See *Celotex Corporation v. Catrett, supra; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. See *Celotex Corporation v. Catrett, supra; Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir.1990).

## OFFICIAL CAPACITIES

The United States of America, Bureau of Prisons, and the individual defen-

dants in their official capacities assert the bar of sovereign immunity. It is well established that under the doctrine of sovereign immunity, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). "[A] suit is considered to be against the sovereign if 'the judgment sought would expend itself on the public treasury or domain.'" *Clarke v. United States,* 691 F.2d 837, 839 (7th Cir.1982) (quoting *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947)). Federal courts have no jurisdiction to consider monetary claims against the United States absent an unequivocal expressed waiver. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). The Federal Tort Claims Act is a limited waiver of sovereign immunity. Under the FTCA, the only proper defendant is the United States of America. 28 U.S.C. § 2679(b)(1) and (d)(1). Therefore, the Bureau of Prisons and the individual defendants in their official capacities are due to be dismissed.

■ The plaintiff contends that the United States is liable under the FTCA because it is the "creator of the laws that created the conditions plaintiff was subdued to" and thus, violated his Eighth Amendment. The United States is liable for the "negligent or wrongful act or omission" of its employees but that liability "does not extend or apply to a civil action ... which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(1) and (b)(2)(A). Accordingly, the United States is due to be dismissed as a defendant because the plaintiff contends that the United States violated his Eighth Amendment right to be free from cruel and unusual punishment.

■ Furthermore, the FTCA permits recovery in tort only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b);

*see also* 28 U.S.C. § 2674. The United States Supreme Court held that:

> an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward. 28 U.S.C. § 1346(b) (United States liable "in accordance with the law of the place where the act or omission occurred.").

*Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). Under Alabama law, the tort of negligent infliction of mental distress is not recognized. *Allen v. Walker,* 569 So.2d 350, 352 (Ala.1990). Accordingly, the United States of America, Bureau of Prisons, and the individual defendants in their official capacities are due to be dismissed.

## CRUEL AND UNUSUAL PUNISHMENT

■ Under *Bivens, supra,* a cause of action exists against federal officials individually for violations of a person's constitutional rights. It is the duty of prisons to furnish prisoners with "reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977), *rev'd in part on other grounds sub nom, Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Prison officials may also be required to take reasonable steps to protect inmates from contracting communicable diseases from other inmates, when the failure to do so "represents an '[omission] sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Lareau v. Manson,* 651 F.2d 96, 109 (2d Cir.1981) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). In determining whether the alleged actions of prison officials rose to the level of cruel and unusual punishment, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). To establish an Eighth Amendment claim, the evidence "must show that the measure taken inflicted unnecessary and wanton pain and suffering

... or was totally without penological justification." *Ort v. White*, 813 F.2d 318, 322 (11th Cir.1987); *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

In *Brown v. Dugger*, No. 88–3776 (11th Cir. February 6, 1990) (unpublished opinion), the Court of Appeals for the Eleventh Circuit stated:

> To recover for prison conditions amounting to cruel and unusual punishment, [plaintiff] must show that: (1) the conditions deprive inmates of the minimal civilized measure of life's necessities,' *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir.1985), *cert. denied*, 475 U.S. 1096 [106 S.Ct. 1492, 89 L.Ed.2d 894] (1986); and (2) the conditions are the result of the states's conscious or callous indifference to inmates' rights. *See Zatler v. Wainwright*, 802 F.2d 397, 401–01 (11th Cir.), *reh'g denied*, 808 F.2d 61 (11th Cir.1986).

(Slip opinion, p. 6). As the court said in *Newman, supra*, "the Constitution does not require that prisoners ... be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291. Prison conditions amount to cruel and unusual punishment when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman, supra*, 452 U.S. at 347, 101 S.Ct. at 2399. Furthermore, a prisoner has no constitutional right to a housing unit of his choice. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

In *Wilson v. Seiter*, ── U.S. ──, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the United States Supreme Court articulated the appropriate standard to be applied in cases involving conditions of confinement; the plaintiff must show that the prison officials were deliberately indifferent to a condition of confinement which constitutes cruel and unusual punishment. *Wilson*, at ── ──, 111 S.Ct. at 2326–27, 115 L.Ed.2d at 282. The Court further stated that this standard necessarily requires a showing of a culpable state of mind on the part of the prison officials. *Wilson*, at ──, 111 S.Ct. at 2326, 115 L.Ed.2d at 281. Therefore, the plaintiff must show first that the condition constitutes a deprivation of a "minimal civilized measure of life's necessities" or basic human need, and second, that the prison officials' state of mind was one of deliberate indifference to the condition and the needs of the plaintiff. *Wilson*, at ──, 111 S.Ct. at 2324.

A report by the United States government emphasized:

> [T]he AIDS virus is hard to get and easily avoided. You won't just "catch" AIDS like a cold or flu because the virus is a different type. The AIDS virus is transmitted through sexual intercourse, the sharing of drug needles, or to babies of infected mothers before or during birth. You won't get the AIDS virus through everyday contact with the people around you in school, in the workplace, at parties, child care centers, or stores. You won't get it by swimming in a pool, even if someone in the pool is infected with the AIDS virus ... You won't get AIDS from a mosquito bite. The AIDS virus is not transmitted through a mosquito's salivary glands like other disease[s] such as malaria or yellow fever. You won't get it from bed bugs, lice, flies, or other insects, either. You won't get AIDS from saliva, sweat, tears, urine, or a bowel movement. You won't get AIDS from a kiss. You won't get AIDS from clothes, a telephone or from a toilet seat. It can't be passed by using a glass or eating utensils that someone else has used. You won't get the virus by being on a bus, train, or crowded elevator with a person who is infected with the virus, or who has AIDS.

*United States Department of Health and Human Services*, Pub. No. (CDC) HHS–088–8404, "Understanding AIDS," p. 2 (1988) (quoted in *Glick v. Henderson*, 855 F.2d 536, 539 n. 1 (8th Cir.1988)).

The court in *Glick*, rejected a prisoner's request to segregate the HIV carriers:

> We agree with [plaintiff] that he could have a colorable claim ... if he could show that there is "a pervasive risk of harm to inmates" of contracting the AIDS virus and if there is "a failure of prison officials to reasonably respond to that risk." ... However, we disagree that this claim pres-

ents such a situation. As already noted the risks being alleged by [plaintiff] are unsubstantiated fears unrecognized by the mainstream medical community. Accordingly, we are unwilling to term as unreasonable the prison officials' decision not to institute a wholesale AIDS testing and segregation program in response to these specific fears.

*Glick, supra,* at 539–40 (citations omitted). All of the examples that the plaintiff lists as means by which he feared he may have contracted AIDS are based on "unsubstantiated fears and ignorance." *Glick, supra,* at 539. *See also Deutsch v. Federal Bureau of Prisons,* 737 F.Supp. 261 (S.D.N.Y.1990) (plaintiff "has not presented ... any facts or allegations from which it might be inferred that the decision to house the cellmate with [plaintiff] without informing him of the HIV test results evidenced a deliberate indifference to his medical needs"); *Feigley v. Fulcomer,* 720 F.Supp. 475 (M.D.Pa.1989) (prison officials did not violate Eighth Amendment by failing to segregate carriers of the AIDS virus); *Davis v. Stanley,* 740 F.Supp. 815 (N.D.Ala.1987) (court rejected Eighth Amendment claim of cruel and unusual punishment against sheriff who placed prisoner in cell with HIV-infected cellmate, finding that there was no deliberate indifference to the well-being of the prisoner); *Cameron v. Metcuz,* 705 F.Supp. 454, 458–60 (N.D.Ind. 1989) (the failure to segregate an inmate with AIDS who had a known violent character was not an Eighth Amendment violation because the prison officials did not intentionally or recklessly expose the prisoner to a known risk of violence from another inmate).

In support of the defendants' summary judgment motion, they presented exhibits and declarations explaining the practices and procedures utilized in housing inmates diagnosed as having AIDS or the antibodies to HIV. Dr. Kenneth P. Moritsugu, the medical director at the Federal Bureau of Prisons of the United States Department of Justice, stated in his declaration:

The Bureau of Prisons' does not segregate HIV-positive inmates. HIV-positive inmates remain in an institution's general population as long as they do not require hospitalization. The Bureau's emphasis on education, universal precautions, and professional management of HIV-positive inmates has rendered isolation unnecessary ... Inmates who are HIV-positive and who are believed to put other inmates or employees at risk (e.g., those who display intentional behavior that can result in the spread the virus) are administratively separated from those whom they place at risk.

All Bureau of Prisons inmates are informed of ways to avoid contracting AIDS ... Policy and training stress that individuals must respond to the presence of blood, semen, vaginal fluids, or any body fluids containing visible blood under the presumption that these fluids are contaminated. Inmates are informed that casual contact will not result in exposure to the virus ...

An inmate can have an HIV-positive roommate and not be at any risk of contracting the virus unless the inmates engage in high risk behavior ...

Thus, the defendants' "[p]rison rules prohibit the types of behavior that result in the transmission of the HIV virus ... Those prisoners who follow the rules are not in significant danger of contracting the disease; therefore, prison officials' policy decisions not to segregate the HIV-carriers ... cannot be said to constitute deliberate indifference. The practices and regulations governing the ... handling of prisoners with AIDS are sound in light of the medical consensus on the spread of the disease. Such decisions are precisely the kind that are best left to the prison officials." *Portee v. Tollison,* 753 F.Supp. 184, 186 (D.S.C.1990), *citing O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987).

█ The plaintiff has not been deprived of any basic need. He has not asserted that his former cellmate engaged in conduct which would expose him to a high risk of contracting AIDS, nor has the plaintiff presented the court with any facts or allegations from which it might be inferred that the decision to house an AIDS infected inmate with the plaintiff evidenced a deliberate indifference to his serious medical needs or a culpable state of mind on the part of the defendants. Based upon the foregoing reasoning and cited authorities, the defendants' practices and policies governing the handling

of prisoners with AIDS do not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Accordingly, defendants' motion for summary judgment SHOULD BE granted.

### RECOMMENDATION

Based on the foregoing considerations, the magistrate judge RECOMMENDS that the motion for summary judgment filed in behalf of defendants be GRANTED and the plaintiff's complaint under 28 U.S.C. § 1331 be DISMISSED. Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the petitioner and upon counsel for the respondents.

Dated this 9th day of December, 1992.