**Arlen YALKUT, Plaintiff–Appellee,**

v.

**Augie GEMIGNANI and Myron Gold, Defendants–Appellants.**

**No. 689, Docket 88–6167.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1989.

Decided April 18, 1989.

Victor Olds, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Amy Rothstein, Edward T. Ferguson, III, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for defendants-appellants.

Jack Wasserman, New York City, for plaintiff-appellee.

Before MESKILL, PRATT and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff Arlen Yalkut is an attorney at law residing in Rockland County, New York. Defendants Augie Gemignani and Myron Gold are Internal Revenue Service (IRS) agents. They appeal from an order of the United States District Court for the Southern District of New York, Griesa, J., denying their motion to dismiss Yalkut's complaint and their alternative motion for summary judgment. These motions were based on defendants' claim of absolute immunity from plaintiff's state law tort claims and qualified immunity from plaintiff's constitutional claim.

Yalkut originally filed this action in the Supreme Court of the State of New York, County of Rockland, claiming Gemignani and Gold committed various common law and constitutional torts when they levied on his bank account. Defendants, as federal officers being sued for acts occurring under color of their employment, removed this action to federal court. 28 U.S.C. §§ 1441(a), 1442(a)(1) (1982); see Mesa v. California, — U.S. —, —––—, 109 S.Ct. 959, 964–68, 103 L.Ed.2d 99 (1989).

## BACKGROUND

For the purposes of this decision, we have taken the facts as alleged by plaintiff.

The critical events leading to this suit occurred in 1977, when Yalkut was a partner in the law firm of Bleifer & Yalkut, P.C. The law firm was dissolved that year,

but it left some unfinished business, namely, unpaid taxes. Bleifer made a partial tax payment to the IRS, leaving a large balance unpaid. Yalkut attempted to settle the firm's tax bill, but was unsuccessful. In 1980, a penalty of $4,944.20 was assessed against Bleifer and Yalkut for the firm's unpaid taxes.

In August 1982, a lien was placed on Yalkut's residence. While two different IRS offices (the one for the district in which Yalkut lived and the one for the district in which Bleifer lived) attempted to coordinate Bleifer's and Yalkut's payments, the IRS levied on Yalkut's home in October 1982. The IRS, Bleifer and Yalkut finally agreed in December 1982 that Bleifer and Yalkut would each pay $200 a month to the IRS until the debt was satisfied. At this time, the IRS claimed that only $4,561.68 was due. The levy was then released, as Yalkut had begun making payments to the IRS. The lien on Yalkut's home remained, however. Bleifer and Yalkut both made their scheduled payments, and in July 1983 the IRS informed Bleifer that no more payments were due. This notice was erroneous, however, and in 1984, Bleifer and Yalkut agreed to resume making payments.

In mid–1985, an IRS accounting showed that $119.45 plus interest remained to be paid. Yalkut and Bleifer disputed this amount, believing they had not been given credit for all of their payments. Bleifer contacted the IRS' Problem Resolution Office, where the total balance owed in March 1986 was eventually determined to be $2,527.40. On April 1, 1986, Bleifer and Yalkut paid the balance due while continuing to contest the amount of the assessment. The 1982 lien on Yalkut's home was removed April 8, 1986. Yalkut eventually received a refund of $684.80, after the IRS determined that he and Bleifer had, in fact, overpaid the tax owed.

Bleifer and Yalkut thought that payment of the tax debt in April 1986 would bring to an end their problems with the IRS. However, on May 7, 1986, defendant Gemignani placed an IRS levy on Yalkut's bank account. This occurred after Yalkut refused Gemignani's request to sign a waiver of the six year IRS collection statute of limitations. When the six year period from the date the tax or penalty is assessed has expired, the IRS can no longer collect the tax or penalty. 26 U.S.C. § 6502(a)(1) (1982). The time limit for the penalty assessed against Bleifer and Yalkut in 1980 was about to run out, and although they had paid the debt in full, the IRS feared that Bleifer might contest the penalty assessed against him. Bleifer could bring such an action any time within two years of payment of the penalty, *i.e.*, until March 31, 1988. 26 U.S.C. § 6532 (1982). If Bleifer did contest the penalty, and prevailed, his payments would be refunded to him. In that event, the IRS would not be able to collect the remainder of the assessment from Yalkut, as the six year statute of limitations would have run. Pursuant to IRS policy, Gemignani sought the waiver of the statute of limitations from Yalkut.

When a "responsible person," that is, one responsible for a tax penalty assessment, Internal Revenue Manual § 5638.1(10) (1985) (IRS Manual), like Yalkut in this situation, refuses to waive the six year statute of limitations, IRS policy authorizes the agent involved to do one of two things: collect the amount of the entire assessment from the person immediately or sue to obtain a judgment on the assessment. *Id.* Gemignani, in consultation with his supervisor, Gold, opted for the former, and filed a levy on Yalkut's bank account for the entire amount of the penalty, $4,743.84. Because Yalkut needed the money in his bank account, he capitulated and, on May 14, 1986, signed a waiver extending the statute of limitations until December 31, 1988, along with a rider stating that he did so under compulsion. The levy was released the same day.

In his complaint against Gemignani and Gold, Yalkut alleged that defendants' filing of the levy was, *inter alia*, without the scope of their employment, in excess of their authority, taken with the knowledge that Yalkut did not owe the IRS money, without legal basis or justification, and malicious. The complaint stated seven causes of action: conversion, intentional infliction of emotional distress, prima facie tort, def-

amation, harm to reputation, civil rights violations under 42 U.S.C. § 1983 (1982), and conspiracy to harm Yalkut. Yalkut seeks monetary damages for his alleged injuries. Defendants moved for dismissal of the action pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56(b). These motions were denied by Judge Griesa on June 16, 1988, in an oral ruling. Defendants now appeal this denial of their motions, claiming they are immune from suit on each of Yalkut's claims.

## DISCUSSION

The denial of substantial claims of absolute immunity and claims of qualified immunity are appealable as of right under *Mitchell v. Forsyth*, 472 U.S. 511, 525–30, 105 S.Ct. 2806, 2815–18, 86 L.Ed.2d 411 (1985), and *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982). Defendants' claim of absolute immunity raises a substantial question on appeal, *see San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254–55 (2d Cir. 1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985), and therefore is properly presented to us. An interlocutory appeal, however, is available only if the question of immunity does not turn on disputed questions of fact. *See Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir.1988); *White v. Frank*, 855 F.2d 956, 958 (2d Cir.1988); *Bolden v. Alston*, 810 F.2d 353, 356 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *Group Health Inc. v. Blue Cross Ass'n*, 793 F.2d 491, 497 (2d Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed. 2d 758 (1987). In this case, Yalkut's claims can be separated into state common law tort claims (*i.e.*, each claim except the section 1983 claim), from which defendants claim absolute immunity, and a federal claim (the section 1983 claim), from which defendants claim qualified immunity. We will discuss each in turn.

### A. State Law Tort Claims

On November 18, 1988, several months after the decision appealed from, the Fed-

eral Tort Claims Act was amended to provide absolute immunity to "any employee of the [federal] Government" who acts within the scope of his or her employment, for monetary damages arising from common law torts causing personal injury or loss of property. Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, § 5, 102 Stat. 4563, 4564 (Reform Act); *see Robinson v. Egnor*, 699 F.Supp. 1207, 1214 (E.D.Va. 1988). The Reform Act was a response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which had limited absolute immunity from tort claims for federal officials to situations in which the official's actions were "within the outer perimeter of [the] official's duties and ... discretionary in nature," *id.* at ——, 108 S.Ct. at 585. The Reform Act broadened the scope of immunity; now, as long as an official is acting within the scope of his or her employment, the official's tortious actions are protected. Congress specifically provided that the Reform Act was to apply to suits pending at the time of its enactment, Reform Act, § 8(b), and so its provisions apply to the instant action.

The question whether Gemignani and Gold, in taking the actions complained of, were acting within the scope of their employment is not one that is inextricably bound with the merits or facts of this case, and so the denial of immunity is appealable. *Cf. Nietert v. Overby*, 816 F.2d 1464, 1466 (10th Cir.1987) (question whether acts alleged in complaint were within scope of official's duty is question of law).

Whether an act is included within the scope of an agent's employment is determined by a broad, two-pronged test. We must determine, first, whether there is a reasonable connection between the act and the agent's duties and responsibilities and, second, whether the act is "not manifestly or palpably beyond the [agent's] authority." *Id.; see also Little v. City of Seattle*, 863 F.2d 681, 683 (9th Cir.1988); *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 462 (1st Cir.1985); *Robinson*, 699 F.Supp. at 1215 & n. 15.

■ Gold's and Gemignani's levy on Yalkut's bank account clearly was related to their official duties. The Internal Revenue Code provides for collecting assessed taxes by levy, 26 U.S.C. § 6331 (1982 & Supp. IV 1986), and the authority to levy has been delegated to defendants by 26 C.F.R. § 301.6331-1 (1988) and a delegation order of the Manhattan District of the IRS, Deleg. Order No. MANCOL-2 (Rev. 6) (Mar. 1, 1985). Collection is also specifically authorized where the six year statute of limitations on collections will expire before the two year taxpayer suit statute of limitations will run out. IRS Manual § 5638.1(11)(a). Thus, Gold's and Gemignani's acts in levying on Yalkut's bank account were clearly related to their official duties.

Second, the levy was not beyond the limits of the authority granted to Gold and Gemignani by the Internal Revenue Code, IRS regulations and the IRS Manual. Their acts were expressly authorized by applicable policies. While the IRS Manual does not have the force of law, *see United States v. New York Tel. Co.*, 644 F.2d 953, 959 n. 10 (2d Cir.1981), the existence of a policy authorizing defendants' actions leaves no doubt that their actions were not "manifestly or palpably" beyond their authority.

Because defendants' actions, as described in the complaint, were reasonably related to their official duties and not "manifestly or palpably" beyond their authority, and therefore were within the scope of their authority, defendants are immune from suit based on state law tort claims. The district court erred in denying the motion to dismiss Yalkut's state law claims.

B. *Federal Constitutional Claim*

Yalkut's remaining claim alleges that defendants violated 42 U.S.C. § 1983 by violating his civil rights.

■ Section 1983, however, applies only to actions taken under the color of state law that violate constitutional or federal statutory rights. Yalkut makes no allegation of state action, nor can he, because defendants' actions were purely federal in nature. Even construing Yalkut's complaint to allege a violation of his constitutional rights by federal officials, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), however, it cannot survive, as defendants are immune from suit.

■ Federal officials are protected from suit for civil damages for alleged constitutional violations if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Before *Harlow*, an official acting maliciously was not immune from suit. *Harlow*, however, rejected this test and the presence of malice is now irrelevant to the question of immunity. *See Anderson v. Creighton*, 483 U.S. 635, 645, 107 S.Ct. 3034, 3041-42, 97 L.Ed. 2d 523 (1987); *see also Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985). The question whether a right is clearly established is one of law, *Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir.1988), and is not dependent on disputed factual issues, and thus this issue is properly raised on appeal. Defendants violated no clearly established right of Yalkut, and therefore they are immune from suit in this case.

Yalkut's complaint alleges that defendants violated his "civil rights," and cites section 1983. Upon review of the record, we believe the only right possibly implicated by the complaint is Yalkut's constitutional right to due process. We see no other constitutional right at issue, and Yalkut has directed us to none. Nor has he set forth an alleged violation of a federal statutory right. It is doubtful, however, that a taxpayer's right to due process could be violated by an IRS levy carried out in accordance with federal law and IRS policy. *See Baddour, Inc. v. United States*, 802 F.2d 801, 807 (5th Cir.1986) (levy pursuant to section 6331 does not violate due process); *Jackman v. D'Agostino*, 669 F.Supp. 43, 46-47 (D.Conn.1987) (no due process claim where there exists a statutory mechanism for refund of overpaid taxes); *see*

also *Cameron v. Internal Revenue Service*, 773 F.2d 126, 128–29 (7th Cir.1985) ("heavy-handed, insensitive, and careless" actions of IRS agents do not give rise to damage remedy); *Flank v. Sellers*, 661 F.Supp. 952, 954–55 (S.D.N.Y.1987) (no *Bivens* action lies based on allegation IRS auditor made mistake of law). These cases are sufficient to establish, at the very least, that defendants' actions violated no right to due process *that is clearly established.*

Because Yalkut's complaint alleges no actions by defendants that violated a clearly established constitutional right to due process, defendants are immune from suit. The district court therefore should have dismissed Yalkut's complaint as to the claim of violation of his civil rights.

## CONCLUSION

We reverse the decision of the district court, because defendants are absolutely immune from plaintiff's state law claims and qualifiedly immune from plaintiff's civil rights claim, and remand to the district court with instructions to dismiss the complaint.