**Melvin P. DEUTSCH, Plaintiff,**

v.

**FEDERAL BUREAU OF PRISONS, Michael J. Quinlan[1], Jessie R. James, John Brown, and Lawrence Coe, Jr., Defendants.**

**No. 89 CIV. 3544 (RJW).**

United States District Court, S.D. New York.

May 2, 1990.

1. The correct name of this defendant is J. Michael Quinlan, not Michael J. Quinlan.

Melvin P. Deutsch, Deutsch, McCormick, D'Amato & Associates, Far Rockaway, N.Y., pro se.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Claude M. Millman, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Plaintiff, appearing *pro se*, filed an action claiming that his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment was violated because he was required to share a prison cell with an inmate diagnosed as having the antibodies to the Human Immunodeficiency Virus ("HIV"), a virus which is often a precursor to Acquired Immune Deficiency Syndrome ("AIDS"). Plaintiff has also asserted various common law tort claims against defendants. Defendants move to dismiss the action, arguing that: (1) the claims against the Federal Bureau of Prisons and the individual defendants in their official capacities should be dismissed pursuant to Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction; (2) the constitutional tort claims against the individual defendants personally should be dismissed pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P., because plaintiff has failed adequately to allege a constitutional tort and because their alleged conduct is protected by qualified immunity; and (3) the common law tort claims against the individual defendants should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., because federal officials acting within the scope of their employment are absolutely immune from such claims.[2] For the reasons that follow, defendants' motion is granted and the action is dismissed.

## BACKGROUND

Plaintiff, Melvin Deutsch ("Deutsch") alleges that, while he was an inmate at the Federal Correctional Institute in Otisville, New York ("Otisville"), defendant Lawrence Coe, Jr. ("Coe"), a corrections counselor at Otisville, assigned him to a prison cell with another inmate ("the cellmate") for a ten-day period beginning July 27, 1988 and ending August 5, 1988. Statement of Claim, attached to Complaint, filed May 19, 1989, at ¶¶ 5–6.

Deutsch claims that during the first three days that he roomed with the cellmate, he shared many personal belongings with him. *Id.* at ¶ 11.[3] On the fourth day, July 30, 1988, the cellmate allegedly informed Deutsch that, on June 14, 1988, he

---

2. In addition, defendants J. Michael Quinlan and Jessie R. James argue that the claims against them should be dismissed pursuant to Rule 12(b)(5) for lack of proper service of process. Defendant J. Michael Quinlan also argues that the claims against him should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Because the Court concludes that the complaint must be dismissed as against all defendants, it does not address these individual grounds for dismissal.

3. In his response to this motion, Deutsch asserts that he had "bodily fluids such as blood exchanged with the [cellmate]." Reply Memorandum, filed February 23, 1990 at ¶ 9. No additional facts regarding his contact with the cellmate have been supplied.

had tested positive for the antibodies to HIV. *Id.* at ¶¶ 7–8. According to Deutsch, the cellmate claimed that the administration at Otisville knew he had tested HIV positive, returned him to the prison because his positive HIV test made him a danger to the public, and warned him not to inform other inmates of his test results. *Id.* at ¶¶ 9–10. Deutsch maintains that, was he made aware of the cellmate's HIV test results, he would not have shared his personal items with him. *Id.* at 11.

Also on July 30, 1988, after Deutsch was told by the cellmate of his HIV test results, Deutsch asked Coe to assign him to another cell. Coe allegedly denied the request on the ground that inmates may not select their own cellmates, adding that if Deutsch "got AIDS, it was just to [sic] bad," and warning Deutsch that if he told other prisoners about the cellmate's HIV test results, he would be punished for inciting a riot. *Id.* at ¶¶ 12–13.[4]

Plaintiff contends that the quality of his life and his ability to maintain relationships with others have been hampered by a fear that he has AIDS. *Id.* at ¶¶ 15–17. He also asserts that defendants' actions have unjustly sentenced him to death, "by way of 'TORTURE'." *Id.* at ¶ 14. Plaintiff, however, has not alleged that he has tested positive for the antibodies to HIV.

Aside from Coe, defendants in this action include the Federal Bureau of Prisons, J. Michael Quinlan ("Quinlan"), the Director of the Federal Bureau of Prisons, Jessie R. James ("James"), formerly the warden of Otisville, and John Brown ("Brown"), formerly Deutsch's unit manager at Otisville.

Deutsch seeks one hundred billion dollars in compensatory damages, along with punitive damages, treble "anti-trust" damages, and attorney's fees, but the complaint does not specify the legal theories he seeks to rely on for recovery. Affording the complaint the liberal construction warranted by plaintiff's *pro se* status, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*per curiam*), it can be viewed as asserting both constitutional and common law tort claims against the Feder-

al Bureau of Prisons and the individual defendants in their official and personal capacities.

### DISCUSSION

The Court's role on a motion to dismiss is a limited one: it must accept plaintiff's well-pleaded allegations at face value and construe the allegations in the complaint in plaintiff's favor. *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985), *mod.,* 793 F.2d 457 (2d Cir.1986). The Court may dismiss the complaint only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ In comparison, a motion for summary judgment may be granted only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding a summary judgment motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–250, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986)). Only if "no reasonable trier of fact could find in favor of the nonmoving party" should summary judgment be granted. *H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989). In other words, only where the entire record would inevitably lead a rational trier of fact to find for the moving party is summary judgment warranted. *National Railroad Passenger Corp. v. New York,* 882 F.2d 710, 713 (2d Cir.1989).

■ While the party seeking summary judgment bears the burden of demonstrat-

---

**4.** Plaintiff has not alleged that Coe knew of the cellmate's HIV test results prior to July 30, 1988.

ing the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983), "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp. (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985) (*per curiam* ). Once the moving party has demonstrated the absence of any genuine issue of material fact, the non-moving party must establish " 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Rule 56(e), Fed.R.Civ.P.; emphasis supplied in *Matsushita* ).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and defenses, and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra,* 804 F.2d at 12. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

### A. Claims Against Defendants In Their Official Capacities

■ The Court must first determine if it has subject matter jurisdiction to entertain the claims against the Federal Bureau of Prisons and the individual defendants in their official capacities. Any lawsuit against an agency of the United States or against an officer of the United States in his or her official capacity is, in essence, an action against the Government. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Because any judgment rendered against the Federal Bureau of Prisons and its officers in their official capacities would be payable out of the federal treasury, these claims are properly regarded as having been asserted against the United States for the purposes of sovereign immunity analysis. *See Washington Square Post 1212 American Legion v. New York,* 720 F.Supp. 337, 353 (S.D.N.Y.1989) (citing *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct.

999, 1006, 10 L.Ed.2d 15 (1963)); *Serra v. United States General Services Admin.,* 667 F.Supp. 1042, 1046–47 (S.D.N.Y.1987), *aff'd,* 847 F.2d 1045 (2d Cir.1988).

■ Under the doctrine of sovereign immunity, "[i]t is axiomatic that the United States may not be sued without its consent and the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). While Congress may waive the shield of sovereign immunity, such a waiver must be unequivocal, and will not otherwise be implied by the courts. *E.g. United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Absent an express waiver, federal courts have no jurisdiction to consider monetary claims against the United States. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), *ovrl'd in part on other grounds, United States v. Mitchell, supra,* 463 U.S. at 216, 103 S.Ct. at 2967. Indeed, even where the Government consents to be sued, the relevant statutory consent and regulations promulgated thereunder must be strictly construed. *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

#### 1. Constitutional tort claims

■ The United States has not waived sovereign immunity for money damages for constitutional torts. *Keene Corp. v. United States, supra,* 700 F.2d at 845 n. 13; *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 105 n. 9 (2d Cir.1981); *Washington Square Post 1212 American Legion v. New York, supra,* 720 F.Supp. at 354. Thus, plaintiff's constitutional tort claims against the Federal Bureau of Prison and the defendants in their official capacities must be dismissed for want of jurisdiction.

#### 2. Common law tort claims

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA"), serves as a limited waiver of the United States' sovereign

immunity with respect to common law tort claims against federal employees acting within the scope of their employment. To the extent that plaintiff has asserted common law tort claims, the Court must determine if he may proceed under the waiver of immunity provided by the FTCA.

■■ The FTCA requires that, before a claimant may initiate an action against the Government for money damages for injury caused by the negligent acts or omissions of any federal employee acting within the scope of his office, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied...." 28 U.S.C. § 2675(a). This administrative exhaustion requirement exists to avoid unnecessary litigation by enabling the Government to promptly evaluate, investigate and consider settlement of claims. *Hartford Accident & Indemnity v. United States,* 720 F.Supp. 258, 260 (E.D.N.Y.1989). Moreover, the filing of an administrative claim is considered a jurisdictional prerequisite to maintaining an action under the FTCA which cannot be waived. *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983); *Keene Corp. v. United States, supra,* 700 F.2d at 841; *Washington Square Post 1212 American Legion v. New York, supra,* 720 F.Supp. at 354. Thus, failure to file an administrative claim will bar a plaintiff from suing under the FTCA.

■ Plaintiff has not alleged that he filed a notice of claim or exhausted the administrative remedies available to him, nor has he disputed defendants' assertion that a notice of claim regarding this incident was never filed.[5] Accordingly, the unexhausted claims under the FTCA must be dismissed for lack of jurisdiction.

### B. *Claims Against Defendants In Their Individual Capacities*

#### 1. Constitutional tort claims

■ A plaintiff may bring an action for monetary damages against a federal official in order to seek redress for a violation of his or her constitutional rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In order to state a claim under *Bivens,* however, a plaintiff must allege that the tortious conduct rose to the level of a violation of a clearly established constitutional right. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

Deutsch alleges defendants have violated his right to be free from cruel and unusual punishment under the Eighth Amendment by housing him with an inmate they knew to have tested positive for the antibodies to HIV, without informing him of these test results.

■ The constitutional prohibition against cruel and unusual punishment embodies evolving contemporary standards of dignity, humanity, and decency. *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Lareau v. Manson,* 651 F.2d 96, 105 (2d Cir.1981). Under the Eighth Amendment, an inmate must be afforded "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In addition, prison officials may be required to take reasonable steps to protect inmates from contracting communicable diseases from other inmates,

---

**5.** Instead, plaintiff defends his failure to present his claim to the agency by arguing that participating in any administrative proceedings would have been fruitless since the director of the agency was a defendant in this action. Even assuming that the failure to file an administrative claim might be excused under certain circumstances, plaintiff has presented no facts in support of his naked assertion of agency bias, and it, standing alone, is woefully insufficient to

support an inference that resort to the administrative process would have been futile. *Cf. Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981) (exhaustion not required under Education for the Handicapped Act where the exercise of administrative remedies would be futile). Indeed, the exhaustion requirement of the FTCA would be effectively nullified if a plaintiff could bypass the administrative process simply by listing the director of the agency as a defendant.

when the failure to do so "represents an '[omission] sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Lareau v. Manson, supra,* 651 F.2d at 109 (quoting *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. at 292). While the determination of whether the challenged actions of prison officials rose to the level of cruel and unusual punishment will depend on the circumstances of the particular case, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish, supra,* 441 U.S. at 547, 99 S.Ct. at 1878.

Defendants argue that the decision to house an inmate who has tested HIV positive in the general prison population without divulging the results of the inmates' HIV test to his or her cellmate is a reasonable practice which balances the risk that AIDS will be transmitted to other inmates with the privacy and security interests associated with disclosing an inmate's medical history. Accordingly, they maintain that no constitutional violation has been asserted by plaintiff.

 In support of their summary judgment motion, defendants have presented evidence as to the practice and procedures utilized at Otisville with regard to housing inmates diagnosed as having the antibodies to HIV. These procedures are based on the general medical understanding that AIDS is not spread by casual conduct, and provide for, *inter alia,* (1) medical screening of newly sentenced inmates for infectious diseases, including HIV, (2) counseling those inmates who test positive for

HIV, (3) prohibiting conduct, such as sexual behavior and sharing needles, that presents a high risk of the transmission of AIDS, (4) limiting assess to the medical information concerning HIV test results in order to ensure the safety of the inmate who was tested, and (5) removing inmates testing positive for HIV from the general prison population when there is reliable evidence that their conduct may pose a health risk to other inmates. *See* Declaration of Donald M. Moore, Health Services Administrator for Otisville, filed November 30, 1989.

Plaintiff has not disputed any material issues of fact regarding the existence or application of these procedures at Otisville. Nor has plaintiff asserted that any of the defendants had specific knowledge that the cellmate might engage in conduct which would expose Deutsch to a high risk of contracting AIDS, yet tacitly condoned or allowed this conduct to occur. *See Feigley v. Fulcomer,* 720 F.Supp. 475, 482–85 (M.D. Pa.1989). *Cf. Cameron v. Metcuz,* 705 F.Supp. 454, 458–60 (N.D.Ind.1989) (while a prison official may not intentionally or recklessly expose a prisoner to a known risk of violence from another inmate, the failure to segregate an inmate with AIDS who had a known violent character was not an Eighth Amendment violation). Deutsch has not presented the Court with any facts or allegations from which it might be inferred that the decision to house the cellmate with Deutsch without informing him of the HIV test results evidenced a deliberate indifference to his serious medical needs. Thus, summary judgment must be afforded defendants on this claim.[6]

---

**6.** This result is in harmony with the conclusions of various courts that have considered claims under the Eighth Amendment by prisoners who seek to have inmates who test positive for HIV segregated from the general prison population. *See Glick v. Henderson,* 855 F.2d 536, 540 (8th Cir.1988) (prison officials' decision not to institute a wholesale AIDS testing and segregation program was not unreasonable); *Feigley v. Fulcomer,* supra, 720 F.Supp. at 482 ("failure to segregate automatically those inmates who have tested positive for HIV or who are suffering

from any stage of AIDS does not violate [plaintiff's] Eighth Amendment right to be free from cruel and unusual punishment"); (*Davis v. Stanley,* 740 F.Supp. 815 (N.D.Ala.1987) (the enforcement of rules against intravenous drug use and sexual behavior in jail is sufficient to combat the risk of contracting AIDS and testing all inmates for the virus is not constitutionally required); *Jarrett v. Faulkner,* 662 F.Supp. 928, 929 (S.D.Ind.1987) ("problem of protecting prisoners from AIDS is best left to the legislature and prison administrators").

Moreover, even if defendants' conduct might be construed as a violation of the Eighth Amendment, federal officials are shielded by qualified immunity from civil damages suits for alleged constitutional violations when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, supra,* 457 U.S. at 818, 102 S.Ct. at 2738. The question of whether a right is clearly established is one of law, *Yalkut v. Gemignani,* 873 F.2d 31, 35 (2d Cir.1989), and the existence of immunity turns on the objective legal reasonableness of the conduct assessed in light of the legal rules that were clearly established at the time the conduct occurred. *Dube v. State University of New York,* 900 F.2d 587, 591, 596 (2d Cir.1990).

> The right the government official is alleged to have violated is "clearly established," and hence beyond any qualified immunity, when the "contours" of the right are sufficiently unambiguous so that a reasonable official knows that what he is doing violates that right. [quoting *Anderson v. Creighton, supra,* 483 U.S. at 640, 107 S.Ct. at 3038] "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted.) A finding of apparent unlawfulness does not require that an earlier decision of this court be directly on point with the current facts; however, the absence of such a decision militates against that finding when, in addition, there have been no cases in this Circuit "foreshadow[ing]" a ruling on the issue, nor many cases in other circuits taking a certain stand. *Shabazz v. Coughlin,* 852 F.2d 697, 701 (2d Cir.1988).

*Molinelli v. Tucker,* 901 F.2d 13, 15 (2d Cir.1990).

Plaintiff can hardly maintain that he had a clearly established right to be informed of whether his cellmate had tested positive for HIV, or to have all inmates who test positive for HIV segregated from the general prison population. Indeed, the question of whether prison officials may segregate inmates who test HIV positive without running afoul of their constitutional right to privacy is not free from doubt. *See Rodriguez v. Coughlin,* No. 87 Civ. 1577E, 1989 WL 59607, 1989 U.S. Dist. LEXIS 15898 (W.D.N.Y. June 2, 1989) (contrasting cases upholding the right of prison officials to segregate inmates who have AIDS, with cases allowing inmates to maintain actions alleging their constitutional right to privacy was violated by the disclosure of AIDS test results to other inmates). Inasmuch as Deutsch has not alleged any facts to support finding that defendants either were specifically aware that the cellmate might violate prison rules and engage in high risk behavior, or that they condoned or allowed a violation of these rules, there is simply no basis for concluding that they violated a clearly established constitutional right. Accordingly, defendants are immune from suit.

### 2. Common law tort claims

On November 18, 1988, the FTCA was amended to provide for absolute immunity to "any employee of the [federal] Government" who acts within the scope of his or her employment, for monetary damages arising from common law torts causing personal injury or loss of property. Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, § 5, 102 Stat. 4563, 4564. *See also Yalkut v. Gemignani, supra,* 873 F.2d at 34. "[A]s long as an official is acting within the scope of his or her employment, the official's tortious actions are protected." *Id.* In order to determine whether an act is within an agent's employment, the court must first decide if there is a reasonable connection between the act and the agent's duties and responsibilities, and second, whether the act is manifestly or palpably beyond the agent's authority. *Id.*

Plaintiff has presented nothing from which the Court could infer that defendants acted in any manner outside the scope of their employment. On the con-

trary, in the few instances in the complaint where specific conduct by an individual defendant is alleged, this conduct is directly and reasonably related to the official duties of the defendant and well within the scope of the official's authority. Furthermore, the acts complained of were in accord with the policy of the Federal Bureau of Prisons, and "the existence of a policy authorizing defendants' action leaves no doubt that their actions were not 'manifestly or palpably' beyond their authority." *Id.* at 35. Therefore, defendants are immune from suit based on common law claims, and these claims must be dismissed.

## CONCLUSION

The claims against the Federal Bureau of Prisons and the individual defendants in their official capacities are dismissed for lack of jurisdiction. The constitutional claims against the individual defendants personally are dismissed because plaintiff has failed to present any facts to support finding a constitutional violation, and, in the alternative, because defendants are shielded by qualified immunity from such claims. The common law tort claims against the individual defendants personally are dismissed because federal officials are absolutely immune from liability for common law torts committed within the scope of their employment. Accordingly, defendants' motion is granted and the action is dismissed.

It is so ordered.