Kevin J. FLYNN, M.D., et al.

v.

Lee T. NESBITT, Jr., M.D., et al.

Civ. A. No. 91–2004.

United States District Court,
E.D. Louisiana.

Aug. 6, 1991.

Victoria L. Bartels, William F. Wessel, Wessel, Bartels & Ciaccio, New Orleans, La., for plaintiffs.

Rutledge C. Clement, Jr., Mary Ellen Roy, A. Lee Levert, Phelps Dunbar, New Orleans, La., for defendants and third-party plaintiffs.

Charles E. Hamilton, III, Karen Edginton Milner, Lamothe, Hamilton & Odom, New Orleans, La., for counter-claimants.

Jill Lynn Ondrejko, U.S. Atty's. Office, New Orleans, La., for counter-defendants and third-party defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the third-party defendants' motion to substitute and dismiss. For the reasons that follow, the motion is GRANTED.

### I. *Facts*

The plaintiffs, Dr. Kevin Flynn, his nurse, Aurora King and her husband, Edward King, filed suit in state court on April 8, 1991, naming as defendants several physicians employed by L.S.U. and the Board of Supervisors of L.S.U. The plaintiffs were employed at the V.A. hospital in New Orleans. The suit alleged that the defendants defamed the plaintiffs by making remarks with malice and with a reckless disregard for the truth. These defamatory statements allegedly occurred when the defendants had meetings with and sent letters to Dr. Sam Threefoot, who was the Chief of Staff of the hospital. According to the defendants (who are also third-party plaintiffs), they met with Dr. Threefoot on January 24, 1990 to discuss their concerns about Dr. Flynn's conduct at the V.A. medical center. At the meeting, Dr. Threefoot allegedly asked the defendants to gather all information regarding Dr. Flynn's conduct. He is said to have promised the defendants that he would keep this information confidential. Subsequently, the defendants sent letters to Dr. Threefoot concerning Dr. Flynn's conduct. Following this meeting and unknown to the defendants, they say, Dr. Threefoot had some minutes prepared regarding their meeting. Despite Dr. Threefoot's alleged promise of confidentiality, Dr. Flynn obtained the minutes of the meeting and the letters defendants sent to Dr. Threefoot through the Freedom of Information Act and Privacy Act.

### II. *Procedural History*

After being sued for defamation, the defendants filed a third-party complaint, adding Secretary Edward Derwinski, the Secretary of the Department for Veteran Affairs, and Dr. Sam Threefoot as third-party defendants. In their third-party demand, the defendants requested that the third-party defendants fully indemnify, reimburse, and compensate them for all amounts adjudged against them. In the alternative, the third-party plaintiffs demanded that the third-party defendants share proportionately in any judgment rendered against them. The U.S. Attorney for the Eastern District of Louisiana certified that the third-party defendants had been acting within the scope of their employment when the allegedly tortious conduct took place. On May 30, 1991 the third-party defendants removed the case to federal court. Thereafter, the third-party plaintiffs amended their third-party complaint, modifying it only slightly.[1] The

1. Apparently, the third party plaintiffs intended to drop their claim against Secretary Derwinski by amending their complaint and eliminating any reference to the Secretary. The Court does not decide whether this is sufficient to dismiss Secretary Derwinski from the third-party demand. Instead, the Court notes that if the Secretary remained in the case, then like Dr. Threefoot, the United States should be substituted in his place. Alternatively, if the Secretary has been dismissed from the third-party demand, the Court need only treat Dr. Threefoot as the remaining third-party defendant. Thus, for the purposes of this opinion, the Court will only refer to Dr. Threefoot.

United States, on behalf of Dr. Threefoot, has now moved to substitute and dismiss.

Two issues are presented: First, under the Federal Tort Claims Act, should the United States be substituted for Dr. Threefoot? Second, does this Court have subject matter jurisdiction over the third-party demand?

### III. *Background*

The doctrine of sovereign immunity is interwoven into our constitutional structure. "It renders the United States, its departments, and its employees in their official capacities as agents of the United States immune from suit except as the United States has consented to be sued." *Williamson v. U.S. Dep't of Agriculture*, 815 F.2d 368, 373 (5 Cir.1987). One of the ways that the United States has consented to suit is through the Federal Torts Claims Act, 28 U.S.C. §§ 2671–2680 (1988). In essence, the Act provides that the United States will allow suits against the sovereign for the torts of its agents. Liability is assessed "to the same extent and in the same manner as liability would attach to a private individual in similar circumstances." *Williamson, supra* at 374. The Act, however, contains a number of exceptions for which no suit may lie. In the Fifth Circuit, courts are instructed to strictly construe the Act and its waiver of sovereign immunity. *See Williamson, supra* at 374; *Thomas v. Calavar Corp.*, 679 F.2d 416, 419 (5 Cir.1982).

### IV. *Detrimental Reliance*

■ Before reaching the issues of substitution and dismissal under the FTCA, the Court must decide whether the third-party plaintiffs' cause of action is based in tort or contract; the FTCA only reaches the tortious conduct of federal employees. Events of contract are outside the Act. The third-party plaintiffs, seeking the safety net of contract, argue that their claim against Dr. Threefoot is based on detrimental reliance. The conceptual underpinning

of detrimental reliance is found in La.Civ. Code Ann. art. 1967 (West 1987). The article provides:

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

*Id.* Article 1967 is placed in Book 3 of the Louisiana Civil Code, entitled "Conventional Obligations, Contracts." The Fifth Circuit has determined that detrimental reliance (or promissory estoppel, as it is frequently called) is a contractual cause of action. *See Stokes v. Georgia–Pacific Corp.*, 894 F.2d 764, 770 (5 Cir.1990). The third-party plaintiffs, rather inventively, contend that they detrimentally relied on Dr. Threefoot's promise of confidentiality in making their remarks about Dr. Flynn.

This Court finds that detrimental reliance is not applicable in this case. First, in their original and amended complaints, the third-party plaintiffs did not allege any facts that would imply a contractually-based cause of action. The cases that involve claims of detrimental reliance, such as *Stokes* and *Breaux v. Schlumberger Offshore Serv.*, 817 F.2d 1226, 1330 (5 Cir. 1987), arise in the context of existing commercial contractual relations or negotiations between the parties. For example, in *Stokes,* the parties had entered into successive 30–day contracts for the delivery and processing of wood chips. The claim of detrimental reliance arose when the parties were apparently negotiating a new delivery contract, but the parties failed to finalize their agreement. *See Stokes, supra* at 766–69. Similarly, in *Breaux,* the parties were negotiating for a lease of some office space. The court found that the parties had, in fact, created an oral contract to lease the premises. *See Breaux, supra* at 1230–33. According to the plaintiffs, Dr. Threefoot simply requested information and promised that this information would remain confidential.[2] In this case, there-

---

**2.** It is interesting to note that the third-party plaintiffs were aware that the information which they gave to Dr. Threefoot would become public knowledge. *See* Government Exhibit # 2. In addition, the third-party plaintiffs argue that

Dr. Threefoot should have known that he could not keep this information confidential under the Freedom of Information Act. Clearly, this argument applies to the third-party plaintiffs as well. Like Dr. Threefoot, the defendant doctors were

fore, there is no evidence of a contractually-based claim: The parties were not involved in negotiations nor in the possible creation of a contract. Events regarding tortious conduct at times superficially infer notions of contract, particularly if promises are involved; but, here, tort dominates the stage. The third-party plaintiffs seek to pass on their potential responsibility for defamation, and Dr. Threefoot's alleged conduct is intertwined with defamation, not with some contract. Therefore, the Court finds that detrimental reliance is inapplicable to this case. As a result, the third-party plaintiffs' claim for contribution or indemnification is in tort, not contract.

### V. *Substitution of Parties*

■ Under the FTCA, if a federal employee is acting within the scope of his office or employment, the proper defendant in a FTCA suit is the United States, not the individual defendant. In 28 U.S.C. § 2679(b)(1) Congress declares:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim* .... Any other

civil action ... arising out of or relating to the same subject matter against the employee ... is precluded....

To determine whether an employee acted within the scope of employment under the Act, a court must look to the principles of *respondeat superior* of the state in which the tort occurred. One commentator notes:

> It may be regarded as settled that in an action brought under the Federal Tort Claims Act based on the negligent ... act ... of a government employee, the respondeat superior law of the state in which the act ... occurred will control the question whether the employee was acting within the scope of his office or employment so as to render the United States liable.

Annotation, *Tort Claims Act—Scope of Employment,* 6 A.L.R.Fed. 378, 384 (1971). Similarly, in a case involving a claim under the FTCA, the Supreme Court, in a short per curiam opinion, held that "this case is controlled by the [state] doctrine of respondeat superior." *Williams v. United States,* 350 U.S. 857, 857, 76 S.Ct. 100, 100, 100 L.Ed. 761 (1955) (per curiam); [3] *United States v. Stewart,* 201 F.2d 135, 137–38 (5 Cir.1953); *Proietti v. Civiletti,* 603 F.2d 88, 90 (9 Cir.1979). And so, in this case, the Court must look to the principles of Louisiana law in determining whether Dr. Threefoot acted in the course and scope of his employment in dealing with the third-party plaintiffs.[4]

---

intimately involved with the V.A. hospital; consequently, they should have known that the information might become public knowledge. It seems that they did. *See id.* Just how Dr. Threefoot's later compliance with the Freedom of Information Act implicates actionable conduct is unclear.

**3.** In *Williams,* the plaintiff sued under the FTCA. At issue was whether a soldier had acted within the scope of his employment when he injured the plaintiff. The Ninth Circuit held that federal law governed; the Supreme Court, however, vacated and remanded the case to determine the scope of employment issue under California law.

**4.** The third-party plaintiffs champion a different test for determining scope of employment, relying on *Yalkut v. Gemingani,* 873 F.2d 31 (2 Cir.1989). This Court declines to follow the test

as announced in *Yalkut:* (1) is there a reasonable connection between the act and the agent's duties and responsibilities and (2) is the act " 'manifestly or palpably beyond the [agent's] authority.' " *Id.* at 34. The Second Circuit borrowed this test from a Tenth Circuit case, *Nietert v. Overby,* 816 F.2d 1464, 1466 (10 Cir.1987). In *Nietert,* however, the defendants were urging the judicially created defense of absolute immunity, not the FTCA, to defend their allegedly tortious conduct. Absolute immunity was applicable only if the defendant (a federal official) had acted in the scope of her employment. Thus, in *Nietert,* the Tenth Circuit articulated the test for scope of employment for the purposes of the absolute immunity doctrine, not for the FTCA. It seems that in *Yalkut,* the Second Circuit should not have relied on this federal test for the purpose of determining scope of employment in a suit that possibly involved

In *Rouly v. Enserch Corp.*, 835 F.2d 1127, 1131 (5 Cir.1988), the Fifth Circuit articulated the test for determining whether a person's conduct fell in the scope of his employment under Louisiana law: Is the employee "performing some function for his employer and for which he was employed."[5] In addition, the Fifth Circuit noted that in Louisiana, courts do not strictly construe the doctrine of scope of employment. *See id.* (citing *Lebrane v. Lewis*, 292 So.2d 216 (La.1974)).

The Court finds that Dr. Threefoot acted in the scope of his employment as Chief of Staff of the V.A. hospital in his meetings and dealings with the third-party plaintiffs. First, Dr. Threefoot satisfies the *Rouly* test. Dr. Threefoot's alleged conduct, his request for information regarding Dr. Flynn, his meeting with the third-party plaintiffs, his receipt of their correspondence, and his promise of confidentiality, were patently employment related. Dr. Threefoot decided, as Chief of Staff, to investigate one of the doctors on his staff after concerns about the doctor's conduct were shared; he acted in no other capacity. Moreover, John Church, the medical director of the V.A. hospital, has unequivocally stated: "That the actions alleged to have been taken by Dr. Threefoot ... were directly related to the performance of his duties as Chief of Staff ... and were done in the normal course of business."

It is also useful to observe that the United States Attorney for the Eastern District of Louisiana, pursuant to 28 C.F.R. § 15.3 (1990), certified that Dr. Threefoot was acting within the scope of his employment in dealing with the third-party plaintiffs. Although the Court does not decide the issue whether the U.S. Attorney's certification is conclusive evidence of scope of employment, the certification of the U.S. Attorney should receive some deference. In *Mitchell v. Carlson*, 896 F.2d 128 (5 Cir.1990), the Fifth Circuit dealt with the issues of certification and substitution of the United States for individual defendants. Although in *Mitchell* scope of employment was not in issue, the Circuit noted that "[o]nce certified as acting within the scope of her employment, ... the district court was *required* to substitute the United States for [the individual defendant], and treat the case as a claim under the FTCA." *Id.* at 136 (emphasis in original). By mandating that the district court substitute the United States, the Circuit clearly intended to give some recognition to the U.S. Attorney's certification.

Therefore, in this case, the Court finds that the U.S. Attorney's certification, the affidavit of John Church, and the facts surrounding the relationship between Dr. Threefoot and the third-party plaintiffs, unqualifiedly establishes that Dr. Threefoot was acting within his scope of employment. Consequently, under § 2679(b)(1) and *Mitchell, supra* at 134, this Court must substitute the United States for the individual third-party defendant.

### VI. *The Third–Party Demand*

The final issue is whether the Court has subject matter jurisdiction over the possible third-party demands against the United States. As noted earlier, the third-party demand sounds in tort because the third-party plaintiffs are attempting to recover contribution or indemnification for defamation. Thus, the subquestion is whether the United States, as third-party defendant, may be liable for damages arising out of a defamation action, or for Dr. Threefoot's negligence in promising to keep the information confidential?

The Federal Torts Claims Act, in waiving the sovereign immunity of the United States, does not waive sovereign immunity in every respect; the Act announces a number of exceptions dealing with discrete claims that may not be brought against the United States for damages. One is for

---

both the FTCA and a claim of absolute immunity. According to the Supreme Court in *Williams,* in a FTCA case, scope of employment is determined by state law principles of respondeat superior. Thus, this Court declines to follow *Yalkut,* relying instead on Louisiana law to determine whether Dr. Threefoot acted in the

scope of his employment. The result might be the same, but the methodology pays due regard to local law, as *Williams* requires.

5. For a slightly different version of this test, see *Manale v. City of New Orleans, Dep't of Police,* 673 F.2d 122, 126 (5 Cir.1982).

defamation, libel, or slander. 28 U.S.C. §§ 2680 and 2680(h) provide that the Act "shall not apply to ... any claim arising out of ... *libel, slander, misrepresentation ...*" (emphasis added). *See also Williamson, supra* at 376–78. Thus, the third-party plaintiffs have not stated a viable cause of action for defamation against the United States. Similarly, § 2680(h) prohibits suits against the government that are based on misrepresentation. In *Janowsky v. United States,* 913 F.2d 393, 397 (7 Cir. 1990), the Seventh Circuit noted that "claims [that] are based on the government's failure to use due care in communicating information ... are barred by the misrepresentation exception." In this case, the third-party plaintiffs maintain that Dr. Threefoot incorrectly or negligently told them that he would keep all the information confidential, and as a result, they relied on his promise. That sort of conduct is simply not actionable under the FTCA. Thus, the Court concludes that the third-party demand against the United States is barred by specific statutory exceptions to the FTCA, and as such, this Court lacks subject matter jurisdiction.

Accordingly, the motion of the United States to substitute and to dismiss the third-party demand for contribution or indemnification is GRANTED. The government's request for costs is DENIED because of the complexity of the questions at issue.