Sal CELAURO, Jr., Paul S. Astrup,
Rosanne B. Astrup, Plaintiffs,

v.

UNITED STATES, INTERNAL REVE-
NUE SERVICE, Lawrence Engle, In-
dividually and in His Official Capaci-

ty, Smith's Aerospace, Inc., Teacher's Federal Credit Union DCS Transport & Logistics Solutions, Defendants.

No. 05–CV–02245–ADS–WDW.

United States District Court, E.D. New York.

Jan. 28, 2006.

Sal Celauro Jr. Massapequa, NY, pro se Plaintiff.

Paul S. Astrup, E. Quogue, NY, pro se Plaintiff.

Rosanne B. Astrup, E. Quogue, NY, pro se Plaintiff.

U.S. Department of Justice, by Karen Elizabeth Wozniak, Trial Attorney, Washington, DC, for the Defendant United States, Internal Revenue Service, and Revenue Officer Lawrence Engel.

Thacher Proffitt & Wood, LLP, by Jonathan D. Forstot, Esq., and Samaa Haridi, Esq., of Counsel, New York City, for Smith's Aerospace, Inc.

Vincent Campasano, Esq., Deep Park, NY, for the Defendant Teacher's Federal Credit Union.

Grotta, Glassman & Hoffman, P.A. by John Thomas Bauer, Esq., of Counsel, Melville, NY, for DCS Transport & Logistics Solutions.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is an action challenging the constitutionality and operation of the federal income tax system. The *pro se* plaintiffs Sal Celauro Jr. ("Celauro"), Paul S. Astrup, and Rosanne B. Astrup ("Paul and Rosanne Astrup") (collectively, the "Plaintiffs") are associated with a group known as "We the People Foundation for Constitutional Education, Inc.," that seeks to redress the Government's alleged violations of the Constitution's tax, war powers, money, debt limiting, and privacy clauses. This case arises out of the tax assessments and levies placed on the Plaintiffs' wages and bank accounts for their failure to both file income tax returns and pay taxes for various years.

Presently before the court are motions by Smith's Aerospace, Inc. ("Aerospace"), Teacher's Federal Credit Union ("TFCU"), and DCS Transport & Logistics Solutions ("DCS") (collectively the "Private Defendants"), the United States, the Internal Revenue Service ("IRS") and IRS Revenue Officer Lawrence Engel ("Engel") (improperly referred to in the caption as "Engle") (collectively the "Government"), to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The factual background was set forth in this Court's previous Memorandum of Decision and Order dated May 13, 2005. In the previous Order, the Court denied the Plaintiffs' request for preliminary relief. For the purpose of providing a detailed basis for this decision, the relevant procedural background and factual allegations will be restated.

### A. Procedural History

The Plaintiffs commenced the action by way of order to show cause seeking the following: (1) the return of $12,700 that Aerospace garnished from Paul Astrup's wages and turned over to the IRS; (2) the return of $3,070.24 that the TFCU garnished from Paul and Rosanne Astrup's savings account; and (3) the return of $7,942.69 that the defendant DCS garnished from Celauro's wages.

In addition, relying on a recent decision of the Second Circuit pertaining to the issuance of administrative summonses by the Internal Revenue Service, *Schulz v. IRS*, 395 F.3d 463 (2d Cir.2005), the Plaintiffs sought preliminary and permanent injunctive relief as follows: (1) an order permanently enjoining the IRS and Engel from abusing their authority by threatening Private organizations with IRS civil enforcement actions; (2) an order permanently enjoining the Private Defendants

from complying with any notice of levy that is not backed by an order from "a court of competent jurisdiction;" and (3) an order preliminarily enjoining the Private Defendants from garnishing any money from the accounts or wages of the Plaintiffs and turning that money over to the IRS. The Plaintiffs argued that based on *Schulz,* a notice of levy cannot be issued without a court order.

In an order dated May 13, 2005, the Court denied the Plaintiffs' request for preliminary relief. *Celauro v. United States,* 371 F.Supp.2d 219 (E.D.N.Y.2005). In finding that the Plaintiffs had no likelihood of success on the merits of their case, the Court noted that *Schulz,* the case the Plaintiffs relied on, was inapplicable because it involved the authority of the IRS to enforce summonses and not notices of levy. *Id.* at 225.

On June 7, 2005, following the decision denying preliminary injunctive relief, the Plaintiffs filed an amended complaint. The Plaintiffs' amended complaint includes five causes of action and three preemptive arguments. The Court will now summarize the factual allegations as they are set forth in the amended complaint.

## B. Facts as to the Plaintiffs Paul and Rosanne Astrup

On October 8, 2004, IRS Revenue Officer Engel sent a "Notice of Levy on Wages, Salaries and other Income" for the years 1996 and 1997 in the amount of $1,669.15 to Aerospace, Paul Astrup's employer, with regard to his earnings. The Notice of Levy was signed by Astrup and returned to the IRS. During the next four pay periods Aerospace withheld $1,669.15 a pay period from Astrup's pay in accordance with the levy. On October 14, 2004, Astrup sent a "Petition for Redress" to the IRS that informed the IRS of his intention to take the dispute over his tax liability to the United States District Court.

On November 29, 2004, Engel sent Aerospace a "Notice of Levy on Wages, Salaries and other Income" for the years 1998–2001 to in the amount of $51,730.34. On November 30, 2004, Engel sent a "Notice of Levy" for the years 1998–2001 in the amount of $51,730.34 to the TFCU where Astrup had a bank account. The TFCU garnished $3,070.24 from Astrup's savings account and turned it over to the IRS.

On December 9, 2004, Engel served Astrup with an Administrative Summons requiring him to appear on January 6, 2005, and to produce his Private and personal books and records for the years 1998–2001. On January 6, 2005, Astrup met with Engel for about 15 minutes. In the meeting, Astrup continually asked questions regarding why he was liable for taxes, and according to the complaint, Engel "refused to answer the questions."

## C. Facts as to the Plaintiff Celauro

On November 13, 2003, Engel visited Celauro at DCS, his place of business. Engel claimed that Celauro owed taxes. Celauro denied the claims and declined to answer questions. Subsequently, Celauro was served with a summons to appear at the IRS office in Garden City on December 1, 2003. On November 21, 2003, Celauro received a memo from his employer DCS regarding a letter that was sent to it by the IRS. The letter informed DCS that Celauro's Form W–4, Employee's Withholding Allowance Certification, did not conform with the requirements of the IRS Code. The letter directed DCS to withhold tax as if Celauro was a single taxpayer. DCS complied and started withholding taxes in accordance with the IRS letter.

On December 1, 2003, Celauro appeared at the IRS office and a hearing was conducted. At the hearing, the IRS was represented by Engel and Revenue Officer

Sara Ann Gagliardi. During the hearing, Celauro questioned whether he was legally required to turn over information to the IRS. Engel responded that it was mandatory. At the end of the hearing, Celauro presented Engel with numerous documents, which all pertained to issues and questions about the IRS tax code. Celauro never received a response about these issues from Engel.

Between December 1, 2003 and February 4, 2004, Celauro sent numerous documents, requests for answers, and letters to Engel, all with no response. During the same time, DCS continued withholding federal taxes from Celauro's wages.

On December 23, 2003, Engel filed a Form 668(Y)(c) Notice of Federal Tax Lien in the amount of $22,285.96 against Celauro with the Clerk of Nassau County, New York. On January 26, 2004, Engel sent DCS a Notice of "Levy on Wages, Salary, and Other Income" in the amount of $23,143.31 with regard to Celauro's earnings. On February 6, 2004, Celauro received his paycheck with a garnishment amount in the sum of $1,596.84 deducted. On February 23, 2004, Celauro resigned from his employment at DCS.

On May 7, 2004, Engel handed Celauro a summons to appear at the IRS on May 25, 2004. The meeting was postponed to June 8, 2004. On June 8, 2004 a hearing was held at the IRS office. Engel was present for the IRS along with a Revenue Agent and an IRS attorney. During the hearing Celauro was served with IRS Letter 3221(DO), which informed Celauro that he owed the IRS the sum of $20,727.33 in unpaid taxes.

On November 13, 2004, Celauro received a Letter 950(DO) from the IRS Director for the North Atlantic Examination, which proposed changes to his federal tax years 1998–2001. The letter offered Celauro two options: (1) agree with the proposed changes and pay the amount; or (2) dis-agree with the amount and request a conference with the Appeals Office. On the same day, Celauro sent a letter to the IRS stating the he would not answer or respond to "fraudulent documents and that they were being returned."

This law suit was filed on May 9, 2005. In the amended complaint, the Plaintiffs' first cause of action alleges the denial of due process as a result of the levy of the Plaintiffs' money property without a court order. The Plaintiffs seek a Court order to "declare that Plaintiffs have a right to a response [from the government], that non-responsive responses ... are repugnant to the Petition Clause and that [the] Plaintiffs have an unalienable right to peaceably enforce their rights ... by retaining their money until their grievances are redressed." Pls.' Am. Comp. at ¶ 61.

The Plaintiffs' second cause of action challenges the territorial jurisdiction of the IRS under Article I, Section 8, Clause 17 of the United States Constitution. The Plaintiffs' third cause of action alleges that the Government has failed to properly respond to the Plaintiffs' "Petitions [for Redress]." The Plaintiffs' fourth cause of action alleges that the Government's process of levy and distraint for the collection of tax was "retaliatory and forbidden." The Plaintiffs' fifth cause of action challenges the constitutionality of the IRS levy imposed on them.

### D. The Motions to Dismiss

All of the Defendants have filed motions to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). In these motions, the Private Defendants move to dismiss pursuant to Rule 12(b)(6), contending that each Private Defendant is immune from liability for complying with a Federal tax levy pursuant to 26 U.S.C. §§ 6332(a)-(e). The IRS and Engel move to dismiss the amended complaint pursu-

ant to Rule 12(b)(6) contending that the United States is the sole proper federal party to this action. The United States moves to dismiss pursuant to Rule 12(b)(1), contending that the Court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity for suits seeking to enjoin the assessment or collection of any tax or seeking punitive damages.

## II. DISCUSSION

### A. Motion to Dismiss Standards

#### 1. Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Hearsay statements contained in the affidavits may not be considered. *Kamen v. AT & T,* 791 F.2d 1006, 1011 (2d Cir.1986).

#### 2. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–

46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)).

"In addition to the forgoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief, Fed.R.Civ.P. 8(a)(2), and all pleadings shall be construed as to do substantial justice,' Fed.R.Civ.P. 8(f)." *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 105 (E.D.N.Y.1995). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

" '[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.' " *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000) (quoting *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)); *see also Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). Although the Plaintiffs have submitted numerous exhibits outside of the pleadings in support of their arguments against dismissal, the Court declines to consider those materials.

### 3. The Plaintiffs' *Pro Se* Status

■ The Court notes that the Plaintiffs are proceeding *pro se* and that their submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). District courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

### B. Applicable Law Relating to the Collection of Tax by Levy and Distraint

■ The Internal Revenue Code provides two principal tools for the collection of delinquent taxes. The first is the lien-foreclosure suit. Under 26 U.S.C. § 7403(a), the IRS is authorized to institute a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). The second is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and generally "does not require any judicial intervention." *United States v. Rodgers,* 461 U.S. 677, 682, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *see also* 26 U.S.C. § 6331(a).

The IRS may collect delinquent taxes from a taxpayer by issuing a levy on the taxpayer's "property and rights to property." 26 U.S.C. § 6331(a). The levy protects the Government against loss or diversion of the subject property while such claims are being resolved. *Rodgers,* 461 U.S. at 682, 103 S.Ct. 2132, 76 L.Ed.2d 236. Section 6331 provides a comprehensive scheme for the administrative enforcement of levy and distraint, or in other words, the administrative seizure and sale of a taxpayers's property and rights to property. 26 U.S.C. § 6331(a).

There is an administrative scheme for levy and distraint under § 6330. The IRS District Director first gives notice of a delinquent tax assessment and a demand for payment to the taxpayer. *Id.* Thereafter, the taxpayer has ten days in which to pay the tax before distraint proceedings commence. *Id.* The taxpayer must also receive a notice of intent to levy with a right to appeal within 30 days prior to any levy or notice of levy. 26 U.S.C. § 6330. A hearing is then held before "an officer or employee [of the IRS] who has had no prior involvement ..." in the case. *Id.* Following the hearing, the taxpayer is afforded the right to appeal the decision to the Tax Court or the United States District Court. *Id.; see also Hudson Valley Black Press v. I.R.S.* 409 F.3d 106, 111 (2d Cir.2005).

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." *Rodgers,* 461 U.S. at 681–82, 103 S.Ct. 2132, 76 L.Ed.2d 236. After notice and an opportunity to be heard under § 6330, a District Director of the IRS is empowered to collect the assessed tax by levy and sale of all property, or rights to property, of the delinquent person or any

property on which there is a lien for payment of the tax. *Id.; see also* 26 U.S.C. § 6331(a).

Pursuant to § 6332(a), in the situation where a taxpayer's property is held by another person or institution, a notice of levy is served upon the custodian of the property. This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. *Phelps v. United States,* 421 U.S. 330, 334, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. § 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal. 26 U.S.C. § 6332(c)(1); *see, e.g., Weissman v. U.S. Postal Service,* 19 F.Supp.2d 254, 260 (D.N.J.1998).

"The constitutionality of the levy procedure ... 'has long been settled.'" *Nat'l Bank of Commerce,* 472 U.S. at 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (quoting *Phillips v. Commissioner,* 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) ("Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.")); *see also Hughes v. IRS,* 62 F.Supp.2d 796, 799 (E.D.N.Y. 1999).

### C. As to the Private Defendants' Motions to Dismiss

■ At the outset, the Court notes that pursuant to 26 U.S.C. § 6332(e), "[c]ompliance with the obligation to honor the [IRS] levy extinguishes liability to the claimant of the property." *Schiff v. Simon & Schuster, Inc.,* 780 F.2d 210, 212 (2d Cir. 1985). The IRS is authorized by statute to collect delinquent taxes from taxpayers by placing a "levy upon all property and rights to property." 26 U.S.C. § 6331(a). The levy may extend to "the accrued salary or wages of any officer, employee, or elected official ... by serving a notice of levy on the employer ... of such officer, employee, or elected official." *Schiff,* 780 F.2d at 212. It is also well established that a bank account is a species of property "subject to levy," within the meaning of §§ 6331 and 6332. *Nat'l Bank of Commerce,* 472 U.S. at 721, 105 S.Ct. 2919, 86 L.Ed.2d 565. A levy on a bank account has long been explicitly authorized by the Treasury Regulations and has been permitted since the enactment of the Revenue Act of 1924. *Id.;* 26 C.F.R. § 301.6331–1(a)(1) (1984).

With these clearly established principles in mind, it becomes readily apparent that the Private Defendants actions were fully authorized by law. Indeed, if any of the Private Defendants had failed to comply with the notices of levy issued to them, they would have exposed themselves to financial liability. The Internal Revenue Code provides that:

> Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest....

26 U.S.C. § 6332(d)(1).

In addition, the non-compliant Defendant would have been subjected to an added penalty for the failure to comply if it

was later found to have failed to surrender the levied property "without reasonable cause." Such penalty equals "50 percent of the amount recoverable under 26 U.S.C. § 6332(d)(1) above." *See* 26 U.S.C. § 6332(d)(2). In this case, instead of subjecting themselves to liability, TFCU, Aerospace, and DCS complied with the law and garnished the wages or property of the Plaintiffs in accordance with the notice of levies they received from the IRS.

For these reasons, and because 26 U.S.C. § 6331 is clear on its face that the IRS is statutorily permitted without a court order to collect delinquent taxes from taxpayers by placing a "levy upon all property and rights to property," the Plaintiffs' claims against the Private Defendants are dismissed with prejudice.

## D. As to the Government's Motion to Dismiss

### 1. Revenue Officer Engel

In this case, Revenue Officer Engel is being sued in his individual as well as in his official capacity. In addition to seeking to enjoin Engel from enforcing the Internal Revenue Code, the Plaintiffs seek punitive damages from Engel for allegedly "violating the fundamental rights" of the Plaintiffs.

The Government contends that all of the allegations pertaining to Engel concern acts performed in his official capacity as an IRS employee and he is, therefore, effectively being sued solely in his official capacity. The Government further asserts that an action seeking relief against a federal employee defendant personally shall be construed as an action against the United States, if the relief sought affects the actions of the defendant in his capacity as a federal employee. *See Yalkut v. Gemignani*, 873 F.2d 31, 34 (2d Cir.1989); *see also Christensen v. Ward*, 916 F.2d 1462, 1483 (10th Cir.1990).

■ There is a two-part test to determine whether an act is within the scope of an agent's employment. *Yalkut*, 873 F.2d at 34. First, the court must determine whether there is a reasonable connection between the act and the agent's duties and responsibilities. *Id.* at 34. Second, the court must determine whether the act is "manifestly or palpably beyond the agent's authority." *Id.*

■ In this case, the issuance of various Notices of Levy, Notices of Federal Tax Liens, and Administrative Summonses were clearly related to defendant Engel's official duties. The Internal Revenue Code provides for collecting assessed taxes by levy. 26 U.S.C. § 6331. The authority to levy has been delegated to the defendants pursuant to 26 C.F.R. § 301.6331–1. The levies at issue here were not beyond the authority granted Engel by the Internal Revenue Code and IRS regulations. Thus, it is clear that he was acting in his official capacity, and performing official duties of his job when he issued those documents to the Plaintiffs. In addition, Engel's actions were reasonably related to his official duties and not manifestly or palpably beyond his authority. Therefore, the acts complained of by the Plaintiffs were within the scope of Engel's employment. *See Yalkut, 873 F.2d at 35.*

■ Reading the *pro se* Plaintiffs' amended complaint liberally, they appear to be alleging a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under *Bivens*, a federal official may be held personally liable for damages if the official personally violated a plaintiff's constitutional rights. *Id.* at 396–97, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. However, a *Bivens* remedy is not available when adequate remedial mechanisms exist for the alleged constitutional violations. *Schweik-*

*er v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

In the context of the assessment of taxes, the Internal Revenue Code provides taxpayers with adequate legal remedies to redress unlawful tax assessments and collections. Thus, generally, courts have held that *Bivens* actions are not available against IRS officials for tax assessment and collection. *Vennes v. An Unknown Number of Unidentified Agents,* 26 F.3d 1448, 1453 (8th Cir.1994); *McMillen v. United States Dep't of Treasury,* 960 F.2d 187, 190–91 (1st Cir.1991).

█ In this case, although the amended complaint may be read to allege a *Bivens* cause of action, based on the availability of adequate legal remedies through the Internal Revenue Code, the Plaintiffs have failed to state a *Bivens* claim. *See Jackman v. D'Agostino,* 669 F.Supp. 43, 46–47 (D.Conn.1987) (no due process claim where a statutory mechanism for refund of overpaid taxes exist); *Flank v. Sellers,* 661 F.Supp. 952, 954–55 (S.D.N.Y.1987) (no Bivens action based on allegation that IRS auditor made a mistake of law).

█ In addition, federal officials are entitled to qualified immunity for conduct that does not violate clearly established constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Simms v. Village of Albion,* 115 F.3d 1098, 1106 (2d Cir.1997). The Supreme Court has long upheld the IRS's assessment and collection procedures as constitutional. *See Nat'l. Bank of Commerce,* 472 U.S. at 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Rodgers,* 461 U.S. at 697, 103 S.Ct. at 2144, 76 L.Ed.2d 236 (1983); *Bob Jones Univ. v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Dodge v. Osborn,* 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557 (1916). All of Engel's conduct that is alleged in the complaint, including the issuance of the tax levies without a court order, did not, as a matter of law, violate clearly established constitutional rights of which a reasonable official would have known.

Accordingly, the Court finds that Engel was acting in his official capacity within the scope of his employment, and that his actions did not violate clearly established constitutional rights of which a reasonable official would have known. The applicable law and Engel's actions as an employee of the IRS demonstrate beyond a reasonable doubt that the Plaintiffs can prove no set of facts which would entitle them to relief based on Engel's conduct. As such, the motion to dismiss the amended complaint as to Engel is granted. The Plaintiffs' claims against Engel are dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### 2. As to the IRS

█ "A suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act, in upholding the dismissal of suit against government officials acting in their official capacity." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Unless Congress has specifically authorized an agency of the federal government, such as the IRS, to be sued in its own name, an action may not be maintained against that agency. *Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952). Congress has not specifically authorized suit against the IRS. Therefore, it is not a suable entity. *See, e.g., Federal Nat'l. Mortg. Ass'n. v. IRS,* 2001 WL 260076 at *2 (E.D.N.Y.2001);

*Higgins v. United States,* 2003 WL 21693717 at *1 (E.D.N.Y.2003) (holding that IRS was not subject to suit in its own name); *Frasier v. Hegeman,* 607 F.Supp. 318 (N.D.N.Y.1985) (holding that a suit against the IRS is a suit against the United States); *Johnson v. United States,* 680 F.Supp. 508 (E.D.N.Y.1987); *United States v. Barretto,* 708 F.Supp. 577, 582 (S.D.N.Y.1989).

Accordingly, the Court finds that the IRS is absolutely immune from the instant suit and grants the Government's motion to dismiss.

### 3. As to the United States

#### a. The Anti–Injunction Act

By statute, courts are barred from entertaining suits whose effect would be to restrain the collection or collection of any tax. 26 U.S.C. 7421(a) (the "AntiInjunction Act"). The Anti–Injunction Act provides that, absent certain exceptions inapplicable to the case at bar, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. 7421(a). The Supreme Court has held that "[t]he manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, *and to require that the legal right to the disputed sums be determined in a suit for refund.* In this manner the United States is assured of prompt collection of its lawful revenue." *Enochs v. Williams Packing and Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (emphasis added).

In this case, the Plaintiffs seek to permanently enjoin the IRS from enforcing the Internal Revenue Code. Such relief is clearly in violation of the Anti–Injunction Act. Under the provisions of the Anti–Injunction Act, this Court lacks jurisdic-

tion over this case where the remedy sought is the restraint of the assessment or collection of income tax. With regard to actions involving the assessment of taxes, the statutory exceptions to the Anti–Injunction Act include: (1) contesting an assessed tax deficiency in Tax Court, *see* I.R.C. §§ 6212(a), (c), 6213(a); (2) contesting the withholding of tax penalties assessed under I.R.C. § 6672(a), *see id.* § 6672(b); (3) contesting tax return preparer penalties, *see id.* § 6694(c); (4) civil actions filed by persons other than the taxpayer, *see id.* § 7426(a),(b)(1); and (5) contesting a jeopardy assessment, *see id.* § 7429(b). *See generally* I.R.C. § 7421(a).

In addition, the Supreme Court instructed in *Enochs* that an injunction suit brought by a taxpayer against the United States could proceed only when "it is apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim" and the taxpayer will suffer irreparable injury and is without an adequate remedy at law. *Enochs,* 370 U.S. at 7, 82 S.Ct. 1125, 8 L.Ed.2d 292.

In this case, the Plaintiffs have an adequate remedy at law and cannot demonstrate irreparable injury. Upon the payment of the tax liabilities assessed, the Plaintiffs may file claims for refund. If the claims are denied, the Plaintiffs may file a suit for refund in district court. 26 U.S.C. § 7422(a). If the Court finds in favor of the Plaintiffs in the refund suit, they would be entitled to interest on the overpayment in addition to the refund. 26 U.S.C. § 6611. Because the Plaintiffs have an adequate remedy at law, the Court need not determine at this time whether the United States will be able to establish its claim to the tax liabilities assessed in a potential refund suit. Thus, the Anti–Injunction Act bars the Plaintiffs' claims that seek the permanent enjoinment of the en-

forcement of the Internal Revenue Code. *See Alexander v. "Americans United" Inc.,* 416 U.S. 752, 762, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

**b. As to the Constitutionality of the Levy Procedures**

▬ The Plaintiffs assert that the collection of federal income taxes without a court order constitutes a taking of property without due process of law. The Court disagrees. Time after time the Supreme Court has upheld the constitutionality of the summary administrative procedures contained in the Internal Revenue Code against due process challenges, on the basis that a post-collection remedy (e.g., a tax refund suit) exists and is sufficient to satisfy the requirements of constitutional due process. *Nat'l. Bank of Commerce,* 472 U.S. at 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Rodgers,* 461 U.S. at 697, 103 S.Ct. at 2144, 76 L.Ed.2d 236 (1983); *Bob Jones Univ.,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Phillips,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Dodge,* 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557 (1916).

The Plaintiffs further assert, in their Reply Memorandum dated September 12, 2005, that the "IRS has repeatedly refused to show [Plaintiffs] where in the [Internal Revenue] Code it makes [Plaintiffs] 'liable for' the tax they claim is owed." Plfs.' Reply at p. 7. The Plaintiffs allege that it is "abundantly unclear" what the term taxpayer, as used throughout the IRC, means, and state that "when [the United States] can show where [Plaintiffs are] 'subject to' or 'liable for' a so-called tax, at that point [Plaintiff] will gladly pay the tax." *Id.* At 4, 10. However, the Government does not have the burden of showing the Plaintiffs "where" they are "subject" or "liable for" the tax before the tax is paid. The comprehensive administrative enforcement scheme and judicial review process with which the Government is required to pro-

ceed under the IRS code is well established and none of it requires the Government to answer the Plaintiffs' philosophical questions regarding the tax system. For a clear explanation of "where in the law subjects the Plaintiffs to tax," the court directs the Plaintiffs' attention to Amendment XVI of the Constitution and the Internal Revenue Code, 26 U.S.C. § 1, which is entitled "Tax Imposed."

**c. Sovereign Immunity**

▬ The United States, as sovereign, may only be sued to the extent that it consents to be sued. *U.S. v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). It is well-settled that only Congress can waive the right of the United States to assert the defense of sovereign immunity, and it must do so explicitly. *United States v. Nordic Village,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States, or that in effect the proceeding is not a suit against the United States. *See* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3655 (3d ed.2005). The Government will be held to have consented to be sued only if a statute's text contains an unequivocally clear statement of a waiver of sovereign immunity. *Nordic Village,* 503 U.S. at 34, 112 S.Ct. 1011, 117 L.Ed.2d 181.

▬ Here, there has been no express waiver of sovereign immunity by the United States. In fact, the Anti–Injunction Act represents an express assertion of sovereign immunity by the United States in suits seeking to restrain the assessment or collection of any tax. With respect to the Plaintiffs' claims for punitive damages for the alleged violation of their "funda-

mental Rights," there is no provision for the award of punitive damages in connection with the Internal Revenue Service's collection activities. A taxpayer may only recover actual, pecuniary damages sustained as a proximate result of the reckless or intentional actions of an IRS officer or employee. 26 U.S.C. § 7433. Furthermore, 28 U.S.C. § 2680 excepts from the Federal Torts Claims Act's waiver of sovereign immunity "claim[s] arising in respect of the assessment or collection of any tax," and 28 U.S.C. § 2674 bars recovery of punitive damages from the federal government.

For the foregoing reasons, the Plaintiffs fail to state a cause of action against the United States, and this Court lacks subject matter jurisdiction over the United States in this matter. Accordingly, the United States' motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) is granted.

### E. As to the Governments' Motion to Amend or Correct the Court's Memorandum and Order Dated May 13, 2005

Following this Court's Order denying the Plaintiff's request for a preliminary injunction, the Government filed a motion to alter or amend the Memorandum of Decision and Order issued May 13, 2005. The Government seeks to correct a portion of the order, which states that "the Plaintiffs complied with the requirements in the summons by appearing for the hearing." Order at 12–13. The Government contends that although the Plaintiffs appeared as requested in the summons, they refused to answer questions or provide materials. Thus, the Government contends that the Plaintiffs did not fully comply with the summons. In addition, the Government states that the Court's use of the word "hearing" to describe the appearance that the summons requests is inappropriate because summoned individuals do not have

an opportunity to be heard. Instead, the Government contends that the Order should refer to the proceeding as a "summons appearance" and that any reference to "an opportunity to be heard" at such proceeding be removed.

Having received no objection to the motion to correct, the Court finds the proposed changes to the Order to be reasonable and correct. Accordingly, the Government's motion to correct is granted and the Court's Memorandum of Decision and Order issued May 13, 2005 is amended as requested.

### III. CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED,** that the Government's motion to amend or correct the Court's Memorandum of Decision and Order issued May 13, 2005 is GRANTED; and it is further

**ORDERED,** that the motions by the defendants to dismiss the amended complaint are GRANTED in their entirety; and it is further

**ORDERED,** that the amended complaint is dismissed with prejudice; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**